# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

PAUL GRUNDY, CARL WOOD,
CHRISTOPHER LANGLEY, KIMBERLY
COOPER, FRANK BILOTTA, DAVIN
POWELL, MICHAEL CELENZA,
GERALD MCGUIRE, DAVID WILSON,
CHRISTINA HEAVRIN, JOAN GARN,
ANDREW YOUNG, ALAN ANDERSEN,
JANE LOAKE, KENNETH HENRIQUES,
TERRY BUSCHBACH, KEITH HEAD,
RICHARD VAN ORDEN, SCOTT
LUNSKI, GLEN FOX, VICTORIA
HECKER, STEPHEN BUCKLEW,
JAMES BYRD, BARBARA ASIBOR,
SUSAN STOKER, JESSICA FINCH and
MAURA PETERSEN, on behalf of
themselves and all others similarly situated,

       Plaintiffs,

   v.

FCA US LLC,

       Defendants.

Case No.

Hon.

**CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

## TABLE OF CONTENTS

*Page*

I.   INTRODUCTION ...........................................................................................1

II.  PARTIES ......................................................................................................3

    a.   Plaintiffs ...............................................................................................3

        i.    Michigan ......................................................................................4

            1.   Plaintiff Paul Grundy ........................................................4

        ii.   Alabama .......................................................................................5

            1.   Carl Wood ..........................................................................5

        iii.  Alaska ..........................................................................................6

            1.   Plaintiff Christopher Langley ...........................................6

        iv.   Arkansas ......................................................................................7

            1.   Plaintiff Kimberly Cooper ................................................7

        v.    Florida .........................................................................................8

            1.   Plaintiff Michael Celenza ................................................8

            2.   Plaintiff Frank Bilotta .....................................................9

        vi.   Georgia ......................................................................................10

            1.   Plaintiff Davin Powell ...................................................10

        vii.  Illinois .......................................................................................11

            1.   Plaintiff Gerald McGuire ...............................................11

viii.   Indiana ......................................................................................12

      1.   Plaintiff David Wilson .................................................12

ix.   Kentucky ..................................................................................13

      1.   Plaintiff Christina Heavrin ..........................................13

      2.   Plaintiff Joan Garn .....................................................14

x.   Massachusetts ...........................................................................15

      1.   Plaintiff Andrew Young ..............................................15

xi.   Nevada ......................................................................................16

      1.   Plaintiff Alan Andersen ..............................................16

xii.   New Jersey ...............................................................................17

      1.   Plaintiff Jane Loake ...................................................17

      2.   Plaintiff Kenneth Henriques .......................................18

xiii.   New York .................................................................................19

      1.   Plaintiff Richard Van Orden ........................................19

xiv.   North Carolina .........................................................................20

      1.   Plaintiff Terry Buschbach ...........................................20

xv.   Ohio .........................................................................................21

      1.   Plaintiff Keith Head ...................................................21

xvi.   Oregon .....................................................................................22

      1.   Plaintiff Glen Fox ......................................................22

2.      Plaintiff Scott Lunski .......................................................23

xvii.   Pennsylvania .................................................................24

1.      Plaintiff Stephen Bucklew ..............................................24

2.      Plaintiff Victoria Hecker ................................................25

xviii.  South Carolina...............................................................26

1.      Plaintiff James Byrd ......................................................26

xix.    Texas .............................................................................27

1.      Plaintiff Barbara Asibor..................................................27

xx.     Utah ...............................................................................28

1.      Plaintiff Susan Stoker ....................................................28

xxi.    Virginia .........................................................................29

1.      Plaintiff Jessica Finch ....................................................29

xxii.   Washington ....................................................................30

1.      Plaintiff Maura Petersen .................................................30

b.      Defendant FCA US LLC....................................................................31

III.    JURISDICTION AND VENUE ......................................................................32

IV.     COMMON FACTUAL ALLEGATIONS ........................................................33

a.      Chrysler-Brand Automobiles Experience Declining Sales,
        Overstocked Inventory, and Frustrated Dealers.....................................33

b.      The Lifetime Warranty.........................................................................34

c.     The Lifetime Warranty's Inspection Clause ........................................36

V.     CLASS ALLEGATIONS .................................................................39

VI.    CAUSES OF ACTION....................................................................47

    a.     Claims Brought on Behalf of the Michigan Class ..............................47

          MICHIGAN COUNT I ...............................................................47

          BREACH OF EXPRESS WARRANTY ........................................47

          MICHIGAN COUNT II ..............................................................49

          BREACH OF CONTRACT/COMMON LAW WARRANTY ..........49

    b.     Claims Brought on Behalf of the Alabama Class ..............................50

          ALABAMA COUNT I................................................................50

          BREACH OF EXPRESS WARRANTY ........................................50

          ALABAMA COUNT II ..............................................................51

          BREACH OF CONTRACT/COMMON LAW WARRANTY ..........51

    c.     Claims Brought on Behalf of the Alaska Class...................................53

          ALASKA COUNT I....................................................................53

          BREACH OF EXPRESS WARRANTY ........................................53

          ALASKA COUNT II ..................................................................54

          BREACH OF CONTRACT/COMMON LAW WARRANTY ..........54

    d.     Claims Brought on Behalf of the Arkansas Class...............................55

          ARKANSAS COUNT I ...............................................................55

          BREACH OF EXPRESS WARRANTY ........................................55

          ARKANSAS COUNT II...............................................................57

BREACH OF CONTRACT/COMMON LAW WARRANTY ..........57

e.    Claims Brought on Behalf of the Florida Class .................................58

FLORIDA COUNT I .............................................................58

BREACH OF EXPRESS WARRANTY .............................................58

FLORIDA COUNT II .............................................................60

BREACH OF CONTRACT/COMMON LAW WARRANTY ..........60

f.    Claims Brought on Behalf of the Georgia Class.................................61

GEORGIA COUNT I.............................................................61

BREACH OF EXPRESS WARRANTY .............................................61

(Ga. Code. Ann. §§ 11-2-313 and 11-2A-210) ....................................61

GEORGIA COUNT II .............................................................63

BREACH OF CONTRACT/COMMON LAW WARRANTY ..........63

g.    Claims Brought on Behalf of the Illinois Class .................................64

ILLINOIS CLASS COUNT I .............................................................64

BREACH OF EXPRESS WARRANTY .............................................64

ILLINOIS COUNT II.............................................................66

BREACH OF CONTRACT/COMMON LAW WARRANTY ..........66

h.    Claims Brought on Behalf of the Indiana Class.................................67

INDIANA COUNT I.............................................................67

BREACH OF EXPRESS WARRANTY .............................................67

INDIANA COUNT II .............................................................69

BREACH OF CONTRACT/COMMON LAW WARRANTY ..........69

(Based on Indiana Law) ....................................................................69

i.   Claims Brought on Behalf of the Kentucky Class ..............................70

     KENTUCKY COUNT I.....................................................................70

     BREACH OF EXPRESS WARRANTY ............................................70

     KENTUCKY COUNT II ...................................................................72

     BREACH OF CONTRACT/COMMON LAW WARRANTY ..........72

j.   Claims Brought on Behalf of the Massachusetts Class.......................73

     MASSACHUSETTS COUNT I.........................................................73

     BREACH OF EXPRESS WARRANTY ............................................73

     MASSACHUSETTS COUNT II .......................................................75

     BREACH OF CONTRACT/COMMON LAW WARRANTY ..........75

k.   Claims Brought on Behalf of the Nevada Class .................................76

     NEVADA COUNT I..........................................................................76

     BREACH OF EXPRESS WARRANTY ............................................76

     NEVADA COUNT II.........................................................................78

     BREACH OF CONTRACT/COMMON LAW WARRANTY ..........78

l.   Claims Brought on Behalf of the New Jersey Class ..........................79

     NEW JERSEY COUNT I ..................................................................79

     BREACH OF EXPRESS WARRANTY ............................................79

     NEW JERSEY COUNT II .................................................................81

     BREACH OF CONTRACT/COMMON LAW WARRANTY ..........81

m.   Claims Brought on Behalf of the New York Class.............................82

NEW YORK COUNT I .......................................................................82

BREACH OF EXPRESS WARRANTY ...........................................82

NEW YORK COUNT II ......................................................................84

BREACH OF CONTRACT/COMMON LAW WARRANTY ..........84

n.   Claims Brought on Behalf of the North Carolina Class......................85

NORTH CAROLINA COUNT I ......................................................85

BREACH OF EXPRESS WARRANTY ...........................................85

NORTH CAROLINA COUNT II .....................................................87

BREACH OF CONTRACT/COMMON-LAW WARRANTIES ......87

o.   Claims Brought on Behalf of the Ohio Class.....................................88

OHIO COUNT I    88

BREACH OF EXPRESS WARRANTY ...........................................88

OHIO COUNT II  90

BREACH OF CONTRACT/COMMON-LAW WARRANTIES ......90

p.   Claims Brough on Behalf of the Oregon Class...................................91

OREGON COUNT I .........................................................................91

BREACH OF EXPRESS WARRANTY ...........................................91

OREGON COUNT II.........................................................................93

BREACH OF CONTRACT/COMMON LAW WARRANTY ..........93

q.   Claims Brought on Behalf of the Pennsylvania Class .......................94

PENNSYLVANIA COUNT I............................................................94

BREACH OF EXPRESS WARRANTY ...........................................94

PENNSLYVANNIA COUNT II..........................................................96

BREACH OF CONTRACT/COMMON LAW WARRANTY..........96

r.   Claims Brought on Behalf of the South Carolina Class......................97

SOUTH CAROLINA COUNT I.........................................................97

BREACH OF EXPRESS WARRANTY .............................................97

SOUTH CAROLINA COUNT II ......................................................99

BREACH OF CONTRACT/COMMON LAW WARRANTY..........99

s.   Claims Brought on Behalf of the Texas Class ..................................100

TEXAS COUNT I 100

BREACH OF EXPRESS WARRANTY ...........................................100

TEXAS COUNT II.........................................................................102

BREACH OF CONTRACT/COMMON LAW WARRANTY........102

t.   Claims Brought on Behalf of the Utah Class ...................................103

UTAH COUNT I   103

BREACH OF EXPRESS WARRANTY ...........................................103

UTAH COUNT II 105

BREACH OF CONTRACT/COMMON LAW WARRANTY........105

u.   Claims Brought on Behalf of the Virginia Class ..............................106

VIRGINIA COUNT I......................................................................106

BREACH OF EXPRESS WARRANTY ...........................................106

VIRGINIA COUNT II ....................................................................108

BREACH OF CONTRACT/COMMON LAW WARRANTY........108

v.   Claims Brought on Behalf of the Washington Class ........................109

WASHINGTON COUNT I.................................................................109

BREACH OF EXPRESS WARRANTY ..........................................109

WASHINGTON COUNT II ..............................................................111

BREACH OF CONTRACT/COMMON LAW WARRANTY ........111

VII.   PRAYER FOR RELIEF .............................................................................112

VIII.   JURY DEMAND.......................................................................................113

Plaintiffs Paul Grundy, Carl Wood, Christopher Langley, Kimberly Cooper, Frank Bilotta, Michael Celenza, Davin Powell, Gerald McGuire, David Wilson, Christina Heavrin, Joan Garn, Andrew Young, Alan Andersen, Jane Loake, Kenneth Henriques, Terry Buschbach, Richard Van Orden, Keith Head, Scott Lunski, Glen Fox, Victoria Hecker, Stephen Bucklew, James Byrd, Barbara Asibor, Susan Stoker, Jessica Finch, and Maura Petersen (collectively, "Plaintiffs"), individuals, on behalf of themselves and a class of other similarly situated individuals, complain of and allege the following causes of action against FCA US LLC, as follows:

## I. INTRODUCTION

1.      This Complaint seeks damages against Defendant FCA US LLC ("FCA") for breach of express warranty of 2006-2009 Chrysler, Dodge, and Jeep vehicles, sold and delivered on, or after, July 26, 2007 (the "Class Vehicles").

2.      From 2006 through 2009, FCA (formerly known as "Chrysler Group LLC") sold, manufactured, advertised, the Class Vehicles with a Lifetime Limited Powertrain Warranty ("Lifetime Warranty"). Under the Lifetime Warranty, FCA promised to repair or replace the powertrain components of the Class Vehicles for the lifetime of the owner/purchaser.

3.      Plaintiffs have each presented their vehicles to various FCA authorized dealers throughout the United States to diagnose and repair failed powertrain components under the Lifetime Warranty. But FCA has systematically refused to

diagnose and perform these repairs by claiming that Plaintiffs failed to adhere to a provision within the warranty that their vehicles undergo a "powertrain inspection" within sixty (60) days of each 5-year anniversary of its in-service date (the "Inspection Clause").

4.     As result, Plaintiffs have been forced to incur significant out-of-pocket expenses for parts and labor to fix their vehicles. To add insult to these injuries, FCA has expressly repudiated its obligations to repair Plaintiffs' vehicles by altogether "revoking" their Lifetime Warranties. Thus, Plaintiffs going forward will incur further expenses to repair the powertrain components and parts of their vehicles.

5.     Plaintiffs herein allege that FCA's non-performance of its obligation under the Lifetime Warranty is without justification because (1) Plaintiffs were never given reasonable notice of the existence of Inspection Clause at the time of purchasing their vehicles and (2) the Inspection Clause is unconscionable.

6.     For such reasons, and for those set forth below, Plaintiffs, on behalf of themselves and those similarly situated, bring this action for monetary damages and injunctive or declaratory relief to redress FCA's breach of express warranty and/or breach of contract/common law warranty.

## II.   PARTIES

### a.  Plaintiffs

7.     For ease of reference, the following chart identifies the representative

Plaintiffs and the state(s) in which they reside and purchased their Class Vehicles.

| Class Representative | State of Residence | State of Purchase | Model Year | Make/Model |
|---|---|---|---|---|
| Grundy, Paul | MI | MI | 2009 | Dodge Journey |
| Wood, Carl | AL | IL | 2008 | Dodge Grand Caravan |
| Langley, Christopher | AK | AK | 2007 | Dodge Ram 1500 |
| Cooper, Kimberly | AR | AR | 2008 | Chrysler Aspen |
| Bilotta, Frank | FL | FL | 2009 | Jeep Grand Cherokee |
| Celenza, Michael | FL | FL | 2007 | Jeep Commander |
| Powell, Davin | GA | GA | 2007 | Chrysler 300 |
| McGuire, Gerald | IL | IL | 2009 | Dodge Ram 1500 |
| Wilson, David | IN | IN | 2008 | Chrysler Town & Country |
| Garn, Joan | KY | KY | 2008 | Jeep Patriot |
| Heavrin, Christina | KY | KY | 2008 | Chrysler Sebring |
| Young, Andrew | MA | MA | 2007 | Chrysler 300C |
| Andersen, Alan | CA | NV | 2007 | Jeep Wrangler |
| Henriques, Kenneth | NJ | NJ | 2009 | Jeep Grand Cherokee |
| Loake, Jane | NJ | NJ | 2008 | Chrysler Town & Country |
| Van Orden, Richard | NY | NY | 2007 | Dodge Ram 1500 |

| Class Representative | State of Residence | State of Purchase | Model Year | Make/Model |
|---|---|---|---|---|
| Buschbach, Terry | NC | NC | 2009 | Dodge Ram 1500 |
| Head, Keith | IA | OH | 2008 | Dodge Ram 1500 |
| Lunski, Scott | OR | OR | 2008 | Jeep Wrangler |
| Fox, Glen | OR | OR | 2008 | Dodge Avenger |
| Bucklew, Stephen | PA | PA | 2008 | Dodge Grand Caravan |
| Hecker, Victoria | WV | PA | 2008 | Dodge Avenger |
| Byrd, James | FL | SC | 2009 | Dodge Journey SXT |
| Asibor, Barbara | TX | TX | 2007 | Dodge Nitro |
| Stoker, Susan | UT | UT | 2008 | Dodge Grand Caravan |
| Finch, Jessica | VA | VA | 2007 | Dodge Grand Caravan |
| Petersen, Maura | WA | WA | 2008 | Dodge Grand Caravan |

i.  **Michigan**

1. *Plaintiff Paul Grundy*

8.      Plaintiff Paul Grundy is a citizen of Michigan and resides in Sterling Heights, Michigan.  Plaintiff Grundy purchased a new 2009 Dodge Journey from Galeana's Van Dyke Dodge, located in Warren, Michigan. FCA, including its agents, representatives, and authorized dealer, represented to Plaintiff Grundy, both orally and through advertisements, that the vehicle came with the Lifetime Warranty.

4

But Plaintiff Grundy was not given notice informing him about the existence of the Inspection Clause or the specific obligations it imposed on him.

9.      In December 2019, Plaintiff Grundy presented the vehicle to Galeana's Van Dyke Dodge to diagnose and repair the vehicle's engine components. FCA refused to make the necessary repairs to the engine pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle under the Lifetime Warranty.

10.     As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Grundy has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### ii.  Alabama

#### 1. Carl Wood

11.     Plaintiff Carl Wood is a citizen of Alabama and resides in Guntersville, Alabama. Plaintiff Wood purchased a new 2009 Dodge Caravan from Royal Gate Chrysler Dodge Jeep RAM located in Columbia, Illinois. Prior to purchasing the vehicle, FCA through its agents, representatives, and authorized dealer represented to Plaintiff Wood, both orally and through advertisements, that the vehicle came

with the Lifetime Warranty.  But Plaintiff Wood was not given notice about the existence of the Inspection Clause or the specific obligations it imposed on him.

12.     In the Spring of 2019, Plaintiff Wood presented the vehicle to Landers McLarty Dodge Chrysler Jeep Ram in Huntsville, Alabama for transmission repairs. At that time, FCA refused to make the necessary repairs pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle's transmission.

13.     As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Wood has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### iii.  Alaska

#### 1. Plaintiff Christopher Langley

14.     Plaintiff Christopher Langley is a citizen of Alaska and resides in Anchorage, Alaska. Plaintiff Langley purchased a new 2007 Dodge Ram 1500 from Lithia Chrysler Dodge in Anchorage, Alaska. Prior to purchasing the vehicle, FCA through its agents, representatives, and its authorized dealer represented to Plaintiff, both orally and through advertising, that the vehicle came with the Lifetime Powertrain Warranty. But Plaintiff Langley was not given notice informing him

about the existence of the Inspection Clause or the specific obligations it imposed on him.

15.    In or around October 2019, Plaintiff Langley brought the vehicle to Lithia Dodge to diagnose and repair a crank shaft and leak in the transfer case. Because these were powertrain components, and thus covered by the Lifetime Warranty, Plaintiff Langley expected that FCA would pay for cost and labor associated with repairing the vehicle. But FCA unjustly declined to perform these repairs under the Lifetime Warranty. Plaintiff Langley was shocked and surprised to learn that FCA had revoked the vehicle's Lifetime Warranty because it failed to undergo powertrain inspection pursuant to the specific terms of the Inspection Clause. According to FCA, because the vehicle failed to undergo a powertrain inspection within the times frames Inspection Clause, its denial of claims under the Lifetime Warranty - claims that would have otherwise been cover—was justified.

16.    As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Langley has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### iv.  **Arkansas**

#### 1. *Plaintiff Kimberly Cooper*

17.    Plaintiff Kimberly Cooper is a citizen of Arkansas and resides in Center Ridge, Arkansas. Plaintiff Cooper purchased a new 2008 Chrysler Aspen from

Superior Dodge Chrysler, located in Conway, Arkansas. Prior to purchasing the vehicle, FCA, through its agents, representatives, and its authorized dealer represented to Plaintiff Cooper, both orally and through advertisements, that the vehicle came with the Lifetime Warranty. But Plaintiff Cooper was not given notice informing her about the existence of the Inspection Clause or the specific obligations it imposed on her.

18.     In August of 2019, Plaintiff Cooper presented the vehicle to Superior Chrysler Dodge for repairs to the vehicle's powertrain parts and components. At that time, FCA refused to make these necessary repairs pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

19.     As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Cooper has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### v.  **Florida**

#### *1. Plaintiff Michael Celenza*

20.     Plaintiff Michael Celenza is a citizen of Florida and resides in Jacksonville, Florida. Plaintiff Celenza purchased a new 2007 Jeep Commander

from Mike Shad Chrysler Jeep, located in Jacksonville, Florida. Prior to purchasing the vehicle, FCA, through its agents, representatives, and its authorized dealer represented to Plaintiff Celenza, both orally and through advertisements, that the vehicle came with the Lifetime Warranty. But Plaintiff Celenza was not given notice informing him about the existence of the Inspection Clause or the specific obligations it imposed on him.

21.    In Fall 2018, Plaintiff Celenza presented the vehicle to Jacksonville Chrysler Jeep Dodge, located in Jacksonville, Florida, for repairs to internal components of the vehicle's engine. At that time, FCA refused to make these necessary repairs pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

22.    As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Celenza has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### 2. Plaintiff Frank Bilotta

23.    Plaintiff Frank Bilotta is a citizen of Florida and resides in Oviedo, Florida. Plaintiff Bilotta purchased a new 2009 Jeep Grand Cherokee from Dodge Chrysler Jeep RAM of Winter Haven, located in Winter Haven, Florida. Prior to

purchasing the vehicle, FCA through its agents, representatives, and authorized dealer represented to Plaintiff Bilotta, both orally and through advertisements, that the vehicle came with the Lifetime Warranty. But Plaintiff Bilotta was not given notice about the existence of the Inspection Clause or the specific obligations it imposed on him.

24.     In July of 2019, Plaintiff Bilotta presented the vehicle to Greenway Dodge Chrysler Jeep Ram for maintenance, at which time, a service technician discovered that an engine sensor required replacement. FCA refused to make the necessary repairs pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

25.     As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Bilotta has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### vi. __Georgia__

#### 1. *Plaintiff Davin Powell*

26.     Plaintiff Davin Powell is a citizen of Georgia and resides in Hinesville, Georgia. Plaintiff Powell purchased a new 2007 Chrysler 300 from an authorized Chrysler dealership located in Georgia. Prior to purchasing the vehicle, FCA through

its agents, representatives, and authorized dealer represented to Plaintiff Powell, both orally and through advertisements, that the vehicle came with the Lifetime Warranty. But Plaintiff Powell was not given notice about the existence of the Inspection Clause or the specific obligations it imposed on him.

27.    In early 2019, Plaintiff Powell presented the vehicle to Liberty Chrysler Dodge Jeep Ram located in Hinesville, Georgia to replace the water pump due to its recent failure. At that time, FCA refused to replace the vehicle's water pump pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty for Plaintiff's Powell's vehicle was revoked because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle's transmission.

28.    As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Powell has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### vii.  Illinois

### *1. Plaintiff Gerald McGuire*

29.    Plaintiff Gerald McGuire is a citizen of Illinois and resides in Lake in the Hills, Illinois. Plaintiff McGuire purchased a new 2009 Dodge Ram 1500 ("the vehicle" for purposes of this section") from Wickstrom Chrysler Jeep Dodge RAM,

located in Barrington, Illinois. Prior to purchasing the vehicle, FCA through its agents, representatives, and authorized dealer, both orally and through advertisements, represented to Plaintiff McGuire that the vehicle came with the Lifetime Warranty. But Plaintiff McGuire was not given notice informing him about the Inspection Clause or the specific obligations it imposed on him.

30.    In or around December 2019, Plaintiff McGuire brought the vehicle to Wickstrom Chrysler to diagnose and repair its transmission. At that time, FCA refused to make these repairs pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle under the Lifetime Warranty.

31.    As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff McGuire has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### viii.  Indiana

#### 1. *Plaintiff David Wilson*

32.    Plaintiff David Wilson is a citizen of Indiana and resides in Marion, Indiana. Plaintiff Wilson purchased a new 2008 Chrysler Town and Country from Ray Harris Chrysler Dodge and Jeep, located in Marion, Indiana. Prior to purchasing

the vehicle, FCA through its agents, representatives, and authorized dealer represented to Plaintiff Wilson, both orally and through advertisements, that the vehicle came with the Lifetime Warranty. But Plaintiff Wilson was not given notice informing him about the existence of the Inspection Clause or the specific obligations it imposed on him.

33.    In or around December of 2019, Plaintiff Wilson brought the vehicle to Mike Anderson Chrysler Dodge and Jeep of Marion, Indiana to diagnose and repair its transmission. At that time, FCA refused to make these repairs pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it failed to undergo a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

34.    As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Wilson has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### ix.  Kentucky

#### 1. Plaintiff Christina Heavrin

35.    Plaintiff Christina Heavrin is a citizen of Kentucky and resides in Louisville, Kentucky. Plaintiff Heavrin purchased a new 2008 Chrysler Sebring from Perkins Chrysler, located in Louisville, Kentucky. Prior to purchasing the

vehicle, FCA and its agents, representatives, and authorized dealer represented to Plaintiff Heavrin—both orally and through advertisements—that the vehicle came with the Lifetime Warranty. But Plaintiff Heavrin was not given notice about the existence of the Inspection Clause and the specific obligations it imposed on her.

36.     In August 2018, Plaintiff Heavrin presented the vehicle to an authorized dealer, Cross Motors Chrysler located in Louisville, Kentucky, to repair the transmission. Later, in November of 2018, she presented the vehicle to Craig and Landreth Chrysler, located in Crestwood, Kentucky, to repair the oil pan. On both occasions, FCA refused to perform these repairs to the vehicle under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it failed to undergo a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused repair the vehicle.

37.     As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Heavrin has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### 2. *Plaintiff Joan Garn*

38.     Plaintiff Joan Garn is a citizen of Kentucky and resides in Lancaster, Kentucky. Plaintiff Garn purchased a new 2008 Jeep Patriot from Mann Chrysler Dodge Jeep RAM, located in Richmond, Kentucky. FCA, including its agents, representatives, and authorized dealer, represented to Plaintiff Garn, both orally and

through advertisements, that the vehicle came with the Lifetime Warranty. But Plaintiff Garn was never given notice informing her about the existence inform her about the existence of the Inspection Clause or the specific obligations it imposed on her.

39.     In January 2020, Plaintiff Garn presented the vehicle to Mann Chrysler to diagnose and repair components of the rear axle. FCA refused to make these repairs pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

40.     As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Garn has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### x. **Massachusetts**

#### 1. *Plaintiff Andrew Young*

41.     Plaintiff Andrew Young is a citizen of Massachusetts and resides in East Longmeadow, Massachusetts. Plaintiff Young purchased a new 2007 Chrysler 300C ("the vehicle" for purposes of this section") from Bertera Chrysler Jeep, located in West Springfield, Massachusetts. FCA, through its agents, representatives, and authorized dealer, represented to Plaintiff Young, both orally

and through advertisements, that the vehicle came with the Lifetime Warranty. But Plaintiff Young was not given notice informing him about the existence of the Inspection Clause or the specific obligations it imposed on him.

42.   In January 2020, Plaintiff Young presented the vehicle to Bertera Chrysler to diagnose and repair the transmission. FCA refused to make the necessary repairs pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle under the Lifetime Warranty.

43.   As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Young has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### xi.  Nevada

#### 1. Plaintiff Alan Andersen

44.   Plaintiff Alan Andersen is a citizen of California and resides in Lake Tahoe, California. Plaintiff Andersen purchased a new 2007 Jeep Wrangler from Lithia Chrysler Jeep, located in Reno, Nevada. Prior to purchasing the vehicle, FCA, including its agents, representatives, and authorized dealer, represented to Plaintiff Andersen, both orally and through advertisements, that it came with the Lifetime

Powertrain Warranty. But Plaintiff Andersen was not given notice informing him of the existence of the Inspection Clause or the specific obligations that it imposed on him.

45.     In November 2019, Plaintiff Andersen presented the vehicle to Lithia Chrysler Jeep for repairs to the exhaust manifold, rear differential, and rear axle. At that time, FCA refused to make the necessary repairs pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

46.     As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Andersen has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### xii.  New Jersey

#### 1. Plaintiff Jane Loake

47.     Plaintiff Jane Loake is a citizen of New Jersey and resides in Ho-Ho-Kus, New Jersey. Plaintiff Loake purchased a new 2008 Chrysler Town & Country from Chrysler Dodge Jeep of Paramus, located in Paramus, New Jersey. FCA, including its agents, representatives, and authorized dealer, represented to Plaintiff Loake, both orally and through advertisements, that the vehicle came with the

Lifetime Warranty. But Plaintiff Loake was not given notice informing her about the existence of the Inspection Clause or the specific obligations it imposed on her.

48.     In October 2019, Plaintiff Loake's spouse, Mr. Barry Bernstein, presented the vehicle to Chrysler Dodge Jeep of Paramus for repairs to the vehicle's axle and engine mounts. At that time, FCA refused to make these necessary repairs pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

49.     As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Loake has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### 2. *Plaintiff Kenneth Henriques*

50.     Plaintiff Kenneth Henriques is a citizen of New Jersey and resides in Lakewood, New Jersey. Plaintiff Henriques purchased a new 2009 Jeep Grand Cherokee from Pine Belt Chrysler Jeep Dodge Ram of Lakewood, New Jersey. FCA, including their agents, representatives, and authorized dealer, represented to Plaintiff Henriques, both orally and through advertisements, that the vehicle came with the Lifetime Warranty. But Plaintiff Henriques was not given notice informing him

about the existence of the Inspection Clause or the specific obligations that it imposed.

51.     In or around July 2019, Plaintiff Henriques presented the vehicle to Pine Belt Chrysler for repairs to the transmission. At that time, FCA refused to make these necessary repairs pursuant to its obligations under the Lifetime Warranty. FCA had revoked the vehicle's Lifetime Warranty because it failed to undergo a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

52.     As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Henriques has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### xiii.  New York

#### 1. Plaintiff Richard Van Orden

53.     Plaintiff Richard Van Orden is a citizen of New York and resides in Port Jervis, New York. Plaintiff Van Orden purchased a new 2007 Dodge Ram 1500 Suresky Chrysler Dodge Jeep RAM, located in Goshen, New York. FCA, including its agents, representatives, and authorized dealer, represented to Plaintiff Van Orden, both orally and through advertisements, that the vehicle came with the Lifetime Warranty. But Plaintiff Van Orden was not given notice informing him of about the existence of the Inspection Clause or the specific obligations that it imposed on him.

54. In Spring 2019, Plaintiff Van Orden presented the vehicle to Suresky Chrysler Dodge for an engine inspection, at which time the dealership discovered that various powertrain components needed to be repaired. However, FCA refused to make these repairs pursuant the warranty. It had revoked Plaintiff Van Orden's Lifetime Warranty because the vehicle failed to undergo a powertrain inspection pursuant to the terms of the Inspection Clause. Since that time, Plaintiff Van Orden has incurred significant out-of-pocket costs as a result of repairing and/or replacing several of the vehicle's powertrain components, including but not limited to the water pump, catalytic converter, engine sensors, and spark plugs.

55. As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Van Orden has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle

### xiv.  North Carolina

#### 1. *Plaintiff Terry Buschbach*

56. Plaintiff Terry Buschbach is a citizen of North Carolina and resides in Cary, North Carolina. Plaintiff Buschbach purchased a new 2009 Dodge Ram 1500 from Hendrick Dodge, located in Cary, North Carolina. FCA, including its agents, representatives, and authorized dealer, represented to Plaintiff Buschbach, both orally and through advertisements, that the vehicle came with the Lifetime Warranty.

But Plaintiff Buschbach was not given notice informing him about the existence of the Inspection Clause or the specific obligations that it imposed on him

57.     In November 2019, Plaintiff Buschbach presented the vehicle to Hendrick Dodge for a diagnostic inspection after the vehicle's "check-engine light" illuminated. Hendrick Dodge informed Plaintiff Buschbach that the vehicle's engine's fuel injectors needed to be replaced. FCA refused to make these necessary repairs to the vehicle pursuant to its obligations under the Lifetime Warranty. FCA had revoked the vehicle's warranty because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle under the Lifetime Warranty.

58.     As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Buschbach has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### xv.  Ohio

#### 1. *Plaintiff Keith Head*

59.     Plaintiff Keith Head is a citizen of Indiana and resides in Lafayette, Indiana. Plaintiff Head purchased a new 2008 Dodge Ram 1500 from Medina Chrysler Dodge Jeep Ram, located in Medina, Ohio. FCA, including its agents, representatives, and authorized dealer, represented to Plaintiff Head, both orally and

through advertisements, that the vehicle came with the Lifetime Warranty. But Plaintiff Head was not given notice informing him about the existence of the Inspection Clause and the specific obligations it imposed on him.

60.    In November 2019, Plaintiff Head presented the vehicle to Medina Chrysler Dodge for a diagnostic inspection after the vehicle's "check-engine light" illuminated. At that time, the dealership determined that the vehicle required new fuel. But FCA refused to cover the cost of these repairs under the Lifetime Warranty. According to FCA, had revoked the vehicle's warranty because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

61.    As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Head has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### xvi.  Oregon

### 1. Plaintiff Glen Fox

62.    Plaintiff Glen Fox is a citizen of Oregon and resides in Salem, Oregon. Plaintiff Fox purchased a new 2008 Dodge Avenger from Withnell Motor Company, located in Salem, Oregon. Prior to purchasing the vehicle, FCA, including its agents, representatives, and authorized dealer, represented to Plaintiff Fox, both orally and through advertisements, that the vehicle came with the Lifetime Warranty. But

Plaintiff Fox was not given notice informing her about the existence of the Inspection Clause or the obligations it imposed on him.

63.    In October 2018, Plaintiff Fox presented the vehicle to Withnell Dodge for general maintenance to the vehicle, and at that time, Plaintiff Fox learned that FCA had revoked the vehicle's Lifetime Warranty for its failure to undergo a powertrain inspection pursuant to the terms of the Inspection Clause. Plaintiff Van Orden has incurred significant out-of-pocket costs to repair the vehicle's powertrain components – including but not limited to the water pump, catalytic converter, engine sensors, and spark plugs – all of which should have been covered by FCA under the Lifetime Warranty.

64.    As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Fox has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle

### 2. *Plaintiff Scott Lunski*

65.    Plaintiff Scott Lunski is a citizen of Oregon and resides in Oregon City, Oregon. Plaintiff Lunski purchased a new 2008 Jeep Wrangler from Northwest Jeep Chrysler Dodge Ram located in Beaverton, Oregon. Prior to purchasing the vehicle, FCA, including its agents, representatives, and authorized dealer, represented to Plaintiff Lunski both orally and through advertisements, that the vehicle came with the Lifetime Warranty. But Plaintiff Lunski was not given notice informing him

about the existence of the Inspection Clause or the specific obligations it imposed on him.

66.    In December 2019, Plaintiff Lunski presented the vehicle to Northwest Chrysler to diagnose and repair and/or replace its head gasket, water pump, and oil pan seal. At that time, FCA refused to repair these powertrain components of the vehicle pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it failed to undergo a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

67.    As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Lunski has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### xvii. **Pennsylvania**

#### *1. Plaintiff Stephen Bucklew*

68.    Plaintiff Stephen Bucklew is a citizen of Pennsylvania and resides in Irwin, Pennsylvania. Plaintiff Bucklew purchased a new 2008 Dodge Grand Caravan from Baum Boulevard Dodge Chrysler Jeep RAM, located in Pittsburgh, Pennsylvania. Prior to purchasing the vehicle, FCA, including their agents, representatives, and authorized dealer, represented to Plaintiff Bucklew, both orally and through advertisements, that the vehicle came with the Lifetime Warranty. But

Plaintiff Bucklew was not given notice informing him of the existence of the Inspection Clause or the specific obligations it imposed on him.

69.     In October 2019, Plaintiff Bucklew presented the vehicle to Jim Shorkey Auto Group, located in Irwin, Pennsylvania, to repair the transmission. FCA refused to repair the transmission pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

70.     As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Bucklew has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

## 2.  *Plaintiff Victoria Hecker*

71.     Plaintiff Victoria Hecker is a citizen of West Virginia and resides in Morgantown, West Virginia. Plaintiff Hecker purchased a new 2008 Dodge Avenger from Monroeville Dodge RAM, located in Monroeville, Pennsylvania. Prior to purchasing the vehicle, FCA, including its agents, representatives, and authorized dealer, represented to Plaintiff Hecker, both orally and through advertisements, that the vehicle came with the Lifetime Warranty. But Plaintiff Hecker was not given

notice informing her about the existence of the Inspection Clause or the specific obligations it imposed on her.

72.      In or around June or July 2018, Plaintiff Hecker presented the vehicle to Waterfront Jeep, located in Morgantown, West Virginia, to repair and/or replace the throttle body, which had recently failed. FCA refused to repair this powertrain component of the vehicle pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

73.     As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Hecker has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### xviii.  South Carolina

### 1. *Plaintiff James Byrd*

74.     Plaintiff James Byrd is a citizen of Florida and resides in Lake Butler, Florida. Plaintiff Byrd purchased a new 2009 Dodge Journey SXT from Addy's Harbor Dodge RAM Fiat, located in Myrtle Beach, South Carolina. Prior to purchasing the vehicle, FCA, including its agents, representatives, and authorized dealer, represented to Plaintiff Byrd, both orally and through advertisements, that

the vehicle came with the Lifetime Warranty. But Plaintiff Byrd was not given notice informing him about the existence of the Inspection Clause and the specific obligations it imposed.

75.    In January 2020, Plaintiff Byrd presented the vehicle to Murray Chrysler Dodge Jeep Ram of Starke, located in Starke, Florida, to diagnose and repair failed engine parts and components. At that time, FCA refused to repair the vehicle's engine pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

76.    As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Byrd has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### xix. Texas

#### 1. Plaintiff Barbara Asibor

77.    Plaintiff Barbara Asibor is a citizen of Texas and resides in Houston, Texas. Plaintiff Asibor purchased a new 2007 Dodge Nitro from Gulfgate Dodge Chrysler Jeep RAM, located in Houston, Texas. Prior to purchasing the vehicle, FCA, including its agents, representatives, and authorized dealer, represented to Plaintiff Asibor, both orally and through advertisements, that the vehicle came with

the Lifetime Warranty. But Plaintiff Asibor was not given notice informing her about the existence of the Inspection Clause or the specific obligations it imposed on her.

78.     In February 2017, Plaintiff Asibor presented the vehicle to Auto Nation Dodge, located in Houston, Texas, to repair the transmission. FCA refused to repair the transmission pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it failed to undergo a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

79.     As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Asibor has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### xx.  Utah

#### 1. *Plaintiff Susan Stoker*

80.     Plaintiff Susan Stoker is a citizen of Utah and resides in Eden, Utah. Plaintiff Stoker purchased a new 2008 Dodge Avenger from Hinckley Dodge Chrysler Jeep Ram, located in Salt Lake City, Utah. Prior to purchasing the vehicle, FCA, including their agents, representatives, and authorized dealer, represented to Plaintiff Stoker, both orally and through advertisements, that the vehicle came with the Lifetime Warranty. But Plaintiff Stoker was not given notice informing her about the existence of the Inspection Clause or the specific obligations it imposed on her.

81.     In or around September 2019, Plaintiff Stoker presented the vehicle to Larry H. Miller Chrysler Jeep Dodge Ram Riverdale, located in Riverdale Utah, to repair a rear-axle leak. FCA refused to repair this powertrain component of the vehicle pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it failed to undergo a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

82.     As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Stoker has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### xxi.  Virginia

#### 1. *Plaintiff Jessica Finch*

83.     Plaintiff Jessica Finch is a citizen of Virginia and resides in Midlothian, Virginia. Plaintiff Finch purchased a new 2007 Dodge Grand Caravan from Pearson Chrysler Dodge, located in Richmond, Virginia. Prior to purchasing the vehicle, FCA, including its agents, representatives, and authorized dealer, represented to Plaintiff Finch, both orally and through advertisements, that the vehicle came with the Lifetime Warranty. But Plaintiff Finch was not given notice informing her about the existence of the Inspection Clause or the specific obligations it imposed on her.

84. In February 2020, Plaintiff Finch presented the vehicle to Pearson Chrysler Dodge to repair an engine leak. At that time, FCA refused to repair the engine under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

85. As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Finch has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### xxii. **Washington**

#### *1. Plaintiff Maura Petersen*

86. Plaintiff Maura Petersen is a citizen of Washington and resides in Lynwood, Washington. Plaintiff Petersen purchased a new 2008 Dodge Grand Caravan ("the vehicle" for purposes of this section") from Dwayne Lanes Chrysler Dodge Jeep RAM, located in Everett, Washington. Prior to purchasing the vehicle, FCA, including its agents, representatives, and authorized dealer, represented to Plaintiff Petersen, both orally and through advertisements, that the vehicle came with the Lifetime Warranty. But Plaintiff Petersen was not given notice informing her about the existence of the Inspection Clause or the specific obligations it imposed on her.

87.     In February 2020, Plaintiff Petersen presented the vehicle to Dwayne Lanes Chrysler Dodge Jeep RAM to diagnose problems related to the vehicle's powertrain, which were resulting in an oil leak. At that time, FCA refused to repair this powertrain components of the vehicle pursuant to its obligations under the Lifetime Warranty. According to FCA, the vehicle's Lifetime Warranty was revoked because it had not undergone a powertrain inspection pursuant to the terms of the Inspection Clause. For that reason alone, FCA refused to cover the cost of parts and labor to repair the vehicle.

88.     As a result of FCA's breach of its obligations under the Lifetime Warranty, Plaintiff Petersen has suffered ascertainable economic damages—the cost of parts and labor necessary to repair the vehicle.

### b. Defendant FCA US LLC

89.     Defendant FCA US LLC is a Delaware limited liability company.

90.     Fiat Chrysler Automobiles N.V. ("Fiat" or, together with FCA, "Fiat Chrysler") is FCA's corporate parent. Fiat's predecessor, Fiat S.p.A., began its acquisition of FCA's predecessor, Chrysler Group LLC, in 2009 and completed it in January 2014, at which time Chrysler Group LLC became a wholly owned indirect subsidiary of Fiat and was renamed FCA US LLC. FCA's principal place of business and headquarters is located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.

91.     FCA's principle place of business and headquarters is located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.

## III.   JURISDICTION AND VENUE

92.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class of plaintiffs and one defendant are citizens of different States. This Court has supplemental jurisdiction over the alleged state law claims pursuant to 28 U.S.C. § 1367.

93.     This Court has specific personal jurisdiction over Defendant because Defendant has its United States headquarters in this District. Defendant also conducts business in Michigan, has purposefully availed itself of the benefits and protections of Michigan by continuously and systematically conducting substantial business in this judicial district, directing advertising and marketing materials to districts within Michigan, and intentionally and purposefully placing Class Vehicles into the stream of commerce within the districts of Michigan and throughout the United States, with the expectation and intent that consumers would purchase them. Thousands of Class Vehicles have been sold in Michigan and are operated within the State and this judicial district.

94.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant has its United States headquarters in this District, transacts business in this District, is subject to personal jurisdiction in this District, and therefore is deemed to be a citizen of this District. Additionally, there are one or more authorized FCA dealers within this District, FCA has advertised in this District, and FCA received substantial revenue and profits from their sales of Class Vehicles in this District; therefore, a substantial and material part of the events and/or omissions giving rise to the claims occurred within this District.

## IV.   COMMON FACTUAL ALLEGATIONS

### a. Chrysler-Brand Automobiles Experience Declining Sales, Overstocked Inventory, and Frustrated Dealers

95.     By the first half of 2007, U.S. sales of Chrysler-brand vehicles had been rapidly dropping—a harbinger of the economic recession soon to wrack the nation only months later.  The company was in the early stages of its financial freefall; layoffs of 13,000 workers had been announced, plants were closing, rumors of a merger or buyout were surmounting, and consumer reports reflected low confidence in the reliability of Chrysler-related brands. To make matters worse, the company was facing significant backlash from its dealers, who were frustrated by overstocked inventories.

96.     To ease dealer tensions, earlier that year, Steven Landry—Executive Vice President of Sales and Marketing at the time—met with the national dealer's council to discuss their agitations. Topping the list of dealers' frustrations; overstocked inventory, lack of coordinated marketing, and lack of competitive warranty offerings. Despite the competitive financial incentive offerings, customers were reporting to dealers that vehicle warranties, specifically powertrain warranties, had become the chief consideration when deciding whether to purchase a vehicle. The company's independent consumer research supported these conclusions, demonstrating that new-car shoppers were taking the position that they would consider buying a Chrysler-branded vehicle if they were offered a lifetime powertrain warranty.

### b.  The Lifetime Warranty

97.     On July 26, 2007, the company made an announcement it hoped would drive sales and increase brand confidence.  Effective immediately, it would offer the Lifetime Warranty on 88 percent of its fleet models. Being an unprecedented warranty offering, the announcement that Chrysler-branded vehicles would be sold with a lifetime duration received coverage from a multitude of news media outlets across the country.

98.     The express terms of the Lifetime Warranty, promised Plaintiffs and the Class members the following in relevant part:

> The Lifetime Powertrain Limited Warranty covers the cost of all parts and labor needed to repair a powertrain component . . . that is defective in workmanship and materials. . .

99.     To say the Lifetime Warranty was a selling point would be an understatement; it was THE selling point of Chrysler-branded vehicles at the time. The Lifetime Warranty was touted with a nationally integrated TV, print, and internet advertising campaign. The Lifetime Warranty received its own logo; an infinity symbol bound by four wheels, denoting the vehicles' never-ending, lifetime coverage. Print and online advertisements boasted statements such as: "the best warranty coverage in the business" and "with this warranty, you're covered for the lifetime of the vehicle." The "lifetime theme" was even built into commercial slogans; for Dodge: "Grab life, for a lifetime"; for Jeep: "have a lifetime of fun out there." Executives pushed the Lifetime Warranty program with public statements such as: "This new Chrysler Lifetime Powertrain Warranty is a statement of confidence to our customers to the reliability of their powertrain. It's peace-of-mind reassurance for as long as they own the vehicle."



100.   From 2007 through 2009, FCA sold hundreds of thousands of Class Vehicles by providing these lifetime assurances to consumers. None of the advertisements disclosed that the Lifetime Warranty was subject to an inspection requirement (discussed below) and would be void if the purportedly required inspection was not performed.

### c.  The Lifetime Warranty's Inspection Clause

101.   Indeed, "peace-of-mind reassurance" was a hollow promise because an unconscionable provision was snuck into the Lifetime Warranty. This provision— not communicated to Class members prior to their purchases—required the Class Vehicles to undergo a powertrain inspection within 60 days of each 5-year anniversary of the in-service date of the vehicle. That provision states:

> In order to maintain the Lifetime Powertrain Limited
> Warranty, the person . . . covered by this Power-train
> Limited Warranty must have a powertrain inspection
> performed by an authorized Chrysler, Dodge, or Jeep
> dealer once every 5 years. . . . The inspection must be made
> within sixty (60) days of each 5 year anniversary of the in-
> service date of the vehicle.  You must have the inspection
> performed to continue this coverage.

(hereinafter referred to as "the Inspection Clause").

102.   Burdened by the financial promises made by the Lifetime Warranty offer, FCA now routinely voids the Lifetime Warranty because vehicle owners were unaware that they needed to have their powertrain inspected within that arbitrarily narrow window.

103.   Many years later, after being denied coverage on their claims, Plaintiffs would discover that FCA voided their Lifetime Warranties for failing to perform under the Inspection Clause.

104.   Plaintiffs and the Class members were not informed of the Lifetime Warranty's specific terms and conditions—most importantly, the Inspection Clause. On information and belief, the terms of the Lifetime Warranty were excluded from warranty manuals provided to all purchasers of 2006 through 2008 model year Class Vehicles. Although the Lifetime Warranty terms were included in 2009 model year warranty manuals, the Inspection Clause is in fine-print and indistinguishable from the surrounding text.

105. Plaintiffs and the Class members could not reasonably expect the Lifetime Warranty to be subject to the terms of the Inspection Clause. It is an atypical provision, it serves no commercial purpose, and it is one-sided. Inspections, unlike scheduled maintenance, do not affect the quality or fitness of powertrain parts and components. No preventative service or maintenance is performed during the quinquennial inspection. If a part is prone to failure or fails, FCA is obligated under the Lifetime Warranty to replace it. The questions as to who discovered the failure, when the failure occurred, and/or when it was discovered, bears no relevancy to the product's defect. Therefore, the lack of opportunity to conduct a powertrain inspection poses no additional risk. It is clear that the Inspection Clause existed merely as a warranty cancellation "poison pill" to snare unaware consumers years after their purchases

106. The Inspection Clause also produces particularly one-sided, unfair, and harsh results. Failure to obtain an inspection doesn't suspend coverage until performance; it voids the entire warranty. Not only is this extremely inequitable, it contravenes public policy when considering FCA's advertising of the Lifetime Warranty. The Lifetime Warranty was the chief consideration of the Class members when they purchased a Class vehicle, and FCA knew this. They enticed Plaintiffs and the Class members to purchase Class Vehicles by promising the Lifetime

Warranty, and then conveniently failed inform them of the terms and conditions that would subject that warranty to cancellation.

## V.   CLASS ALLEGATIONS

107.   Plaintiffs bring this action on their own behalf, pursuant to the Federal Rules of Civil Procedure, Rules 23(a), 23(b)(2), and/or 23(b)(3), and seek to represent the following state classes:

**Michigan Class:**
All persons or entities who purchased a Class Vehicle within the state of Michigan or purchased a Class Vehicle and reside in Michigan.

**Alabama Class:**
All persons or entities who purchased a Class Vehicle within the state of Alabama or purchased a Class Vehicle and reside in Alabama.

**Alaska Class:**
All persons or entities who purchased a Class Vehicle within the state of Alaska or purchased a Class Vehicle and reside in Alaska.

**Arkansas Class:**
All persons or entities who purchased a Class Vehicle within the state of Arkansas or purchased a Class Vehicle and reside in Arkansas.

**Florida Class:**
All persons or entities who purchased a Class Vehicle within the state of Florida or purchased a Class Vehicle and reside in Florida.

**Georgia Class:**
All persons or entities who purchased a Class Vehicle within the state of Georgia or purchased a Class Vehicle and reside in Georgia.

**Illinois Class:**
All persons or entities who purchased a Class Vehicle within the state of Illinois or purchased a Class Vehicle and reside in Illinois.

**Indiana Class:**
All persons or entities who purchased a Class Vehicle within the state of Indiana or purchased a Class Vehicle and reside in Indiana.

**Kentucky Class:**
All persons or entities who purchased a Class Vehicle within the state of Kentucky or purchased a Class Vehicle and reside in Kentucky.

**Massachusetts Class:**
All persons or entities in the state of Massachusetts who purchased in Massachusetts or purchased a Class Vehicle and reside in Massachusetts.

**Nevada Class:**
All persons or entities who purchased a Class Vehicle within the state of Nevada purchased a Class Vehicle and reside in Nevada.

**New Jersey Class:**
All persons or entities who purchased a Class Vehicle within the state of New Jersey or purchased a Class Vehicle and reside in New Jersey.

**New York Class:**
All persons or entities who purchased a Class Vehicle within the state of New York or purchased a Class Vehicle and reside in New York.

**North Carolina Class:**
All persons or entities who purchased a Class Vehicle within the state of North Carolina or purchased a Class Vehicle and reside in North Carolina.

**Ohio Class:**
All persons or entities who purchased a Class Vehicle within the state of Ohio or purchased a Class Vehicle and reside in Ohio.

**Oregon:**
All persons or entities who purchased a Class Vehicle within the state of Oregon or purchased a Class Vehicle and reside in Oregon.

**Pennsylvania Class:**
All persons or entities who purchased a Class Vehicle within the state of Pennsylvania or purchased a Class Vehicle and reside in Pennsylvania.

**South Carolina Class:**
All persons or entities who purchased a Class Vehicle within the state of South Carolina or purchased a Class Vehicle and reside in South Carolina.

**Texas Class:**
All persons or entities who purchased a Class Vehicle within the state of Texas or purchased a Class Vehicle and reside in Texas.

**Utah Class:**
All persons or entities who purchased a Class Vehicle within the state of Utah or purchased a Class Vehicle and reside in Utah.

**Virginia Class:**
All persons or entities who purchased a Class Vehicle within the state of Virginia or purchased a Class Vehicle and reside in Virginia.

**Washington Class:**
All persons or entities who purchased a Class Vehicle within the state of Washington or purchased a Class Vehicle and reside in Washington.

108.   Together, the state classes shall be collectively referred to herein as "the Class."  Excluded from the above Class are FCA, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly own subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third degree of relationship to any such persons.

109.   Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

110.   This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rules of Civil Procedure, Rule 23.

111.   **Numerosity of the Class (Federal Rules of Civil Procedure, Rule 23(a)(1))** – The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believes that there are tens of thousands of current original owners of Class Vehicles and former original owners of Class

Vehicles who were denied coverage under the Lifetime Warranty. Because the class members may be identified through business records regularly maintained by FCA and its employees and agents, government records, and the media, the number and identities of class members can be ascertained. Members of the Class can be notified of the pending action by e-mail, mail, and supplemented by published notice, if necessary.

112. **Commonality and Predominance (Federal Rules of Civil Procedure, Rule 23(a)(2)** – There are questions of law and fact common to the Class. These questions predominate over any questions affecting only individual class members. These common legal and factual issues include, but are not limited to:

    a. Whether FCA breached the expressed terms of the Lifetime Warranty in their systematic denial of valid Lifetime Warranty claims, based on the Inspection Clause;

    b. Whether Plaintiffs and members of the Class were provided reasonable notice of the Inspection Clause;

    c. Whether the Inspection Clause is unconscionable;

    d. Whether Plaintiffs and members of the Class are entitled to equitable, legal, or injunctive relief and, if so, in what amount.

113. **Typicality (Federal Rules of Civil Procedure, Rule 23(a)(3))** – The claims of the representative Plaintiffs are typical of the claims of each member of the Class. Plaintiffs, like all other members of the Class, are both current original owners of a Class Vehicle and have sustained damages arising from FCA's cancellation of their Lifetime Warranties based on the Inspection Clause, as alleged herein. The representative Plaintiffs and the members of the Class were and are similarly or identically harmed by FCA's breach of the Lifetime Warranty and/or breach of contract.

114. **Adequacy (Federal Rules of Civil Procedure, Rule 23(a)(4))** – The representative Plaintiffs will fairly and adequately represent and protect the interests of the Class members and have retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiffs and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

115. **Superiority (Federal Rules of Civil Procedure, Rule 23(b)(3))** – This suit may be maintained as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this

dispute. The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address FCA's conduct. Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

116.   Plaintiffs contemplate the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Upon information and belief, FCA's own business records and electronic media can be utilized for the contemplated notices, as well as motor vehicle registration databases in all states within the United States. To the extent that any further notices may be required, Plaintiffs would contemplate the use of additional media and/or mailings.

117.   This action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

a.   without class certification and determination of declaratory, injunctive, statutory, and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

i.   inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

ii.   adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

b. the parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

c. common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a

Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

    i.    the interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

    ii.    the extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

    iii.    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    iv.    the difficulties likely to be encountered in the management of a Class Action.

## VI.    CAUSES OF ACTION

### a.  Claims Brought on Behalf of the Michigan Class

### MICHIGAN COUNT I

### BREACH OF EXPRESS WARRANTY
### (Mich. Comp. Laws §§ 440.2313 and 440.2860)

118.    Plaintiff Paul Grundy and the Michigan Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

119.    FCA was and is at all relevant times a "merchant" with respect to motor vehicles under Mich. Comp. Laws § 440.2104(1) and "sellers" of motor vehicles under § 440.2103(1)(c).

120. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

121. In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for entire duration of Plaintiff and Class members ownership of the Class vehicles.

122. FCA's promise of the Lifetime Warranty formed the basis of the bargain reached when Plaintiffs and the Michigan Class purchased their Class Vehicles.

123. FCA has breached the Lifetime Warranty by refusing to cover the cost of repairing defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

124. Affording FCA a reasonable opportunity to cure their breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated their obligations under its terms.

125. Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts, fails in its essential purpose because the contractual

remedy is insufficient to make Plaintiff and the Michigan Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

126.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

127.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other Michigan Class members have been damaged in an amount to be determined at trial.

## MICHIGAN COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Michigan Law)

128.   Plaintiff Paul Grundy and the Michigan Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

129.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under Michigan Commercial Code, Plaintiff and the Michigan Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiff and the Michigan Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

130. FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles.

131. As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the Michigan Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### b. Claims Brought on Behalf of the Alabama Class
### ALABAMA COUNT I
### BREACH OF EXPRESS WARRANTY

132. Plaintiff Carl Wood and the Alabama Class members reallege and incorporate by reference all paragraphs as though fully set forth herein.

133. FCA was, and is, at all relevant times a "merchant" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and "sellers" of motor vehicles under § 7-2-103(1)(d).

134. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

135. In connection with the purchase of Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. For the duration of the lifetime of the first registered owner, FCA promised to cover the cost

of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials.

136.   FCA breached the Lifetime Warranty by refusing to repair and/or adjust the materials and workmanship defects in the powertrain components of the Class Vehicles.

137.   Furthermore, the Lifetime Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Alabama Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

138.   Affording FCA a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because FCA has expressly repudiated their obligations under its terms.

139.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

140.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other Alabama Class Members have been damaged in an amount to be determined at trial.

## ALABAMA COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Alabama Law)

141.   Plaintiff Carl Wood and the Alabama Class members reallege and incorporate by reference all paragraphs as though fully set forth herein.

142.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under Alabama's Commercial Code, Plaintiff and the Alabama Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiffs and the Alabama Class members to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by FCA, and/or warranted the quality or nature of those services to Plaintiffs.

143.   FCA breached this warranty or contract obligation by failing to repair the Class Vehicles evidencing a sudden unintended acceleration problem, including those that were recalled, or to replace them.

144.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiffs and the Alabama Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### c.  Claims Brought on Behalf of the Alaska Class

### ALASKA COUNT I

### BREACH OF EXPRESS WARRANTY

### (Alaska Stat. §§ 45.02.313 and 45.12.210)

145.   Plaintiff Langley and the Alaska Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

146.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under Alaska Stat. §§ 45.02.104(a) and 45.12.103(c)(11); and is a "seller" of motor vehicles under Alaska Stat. § 45.02.103(a)(4).

147.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. §§ 45.02.105(a) and 45.12.103(a)(8).

148.   In connection with the purchase one of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Powertrain Limited Warranty. For the duration of the lifetime of the first registered owner, FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials.

149.   FCA's promise of the Lifetime Warranty formed the basis of the bargain that was reached when Plaintiff and the Alaska Class purchased their Class Vehicles.

150.   FCA breached the Lifetime Warranty by refusing to repair and/or adjust the materials and workmanship defects in the powertrain components of the Class Vehicles.

151.   Furthermore, the Lifetime Warranty of repair and/or adjustments to defective powertrain parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Alaska members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

152.   Affording FCA a reasonable opportunity to cure its breach would be unnecessary and futile here because FCA has expressly repudiated its obligations.

153.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

154.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other Alaska Class Members have been damaged in an amount to be determined at trial.

## ALASKA COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Alaska Law)

155.   Plaintiff Langley and the Alaska Class members reallege and incorporate by reference all paragraphs as though fully set forth herein.

156.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under Alaska's Commercial Code, Plaintiffs and the Alaska Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiffs and the Alaska Class members to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by FCA, and/or warranted the quality or nature of those services to Plaintiffs.

157.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain parts and components of the Class Vehicles.

158.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiffs and the Alaska Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**d.  Claims Brought on Behalf of the Arkansas Class**

**ARKANSAS COUNT I**

**BREACH OF EXPRESS WARRANTY**

**(Ark. Code Ann. §§ 4-2-313 and 4-2A-210)**

159.   Plaintiff Kimberly Cooper and the Arkansas Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

160.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under Ark. Code Ann. §§ 4-2-104(1) and 4-2A-103(3), and "seller[s]" of motor vehicles under § 4-2-103(1)(d).

161.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ark. Code Ann. §§ 4-2-105(1) and 4-2A-103(1)(h).

162.   In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for entire duration of Plaintiff and Class members ownership of the Class vehicles.

163.   FCA's promise of the Lifetime Warranty formed the basis of the bargain reached when Plaintiff and the Class purchased their Class Vehicles.

164.   FCA has breached the Lifetime Warranty by refusing to cover the cost of repairing defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

165.   Affording FCA a reasonable opportunity to cure their breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated their obligations under its terms.

166.   Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Arkansas Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

167.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

168.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other Arkansas Class members have been damaged in an amount to be determined at trial.

## ARKANSAS COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Arkansas Law)

169.   Plaintiff Kimberly Cooper and the Arkansas Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

170.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under Arkansas Commercial Code, Plaintiff and the Arkansas Class

members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiff and the Arkansas Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

171.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles.

172.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the Arkansas Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**e.  Claims Brought on Behalf of the Florida Class**

**<u>FLORIDA COUNT I</u>**

**<u>BREACH OF EXPRESS WARRANTY</u>**

**(Fla. Stat. § 672.313)**

173.  Plaintiffs Michael Celenza, Frank Bilotta, and the Florida Class members reallege and incorporate by reference all paragraphs as though fully set forth herein.

174.   Defendant was and is at all relevant times a "merchant" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under § 672.103(1)(d).

175.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

176.   In connection with the purchase one of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for the entire duration of Plaintiffs and Class members' ownership of the Class Vehicles.

177.   FCA's promise of the Lifetime Warranty formed the basis of the bargain that was reached when Plaintiffs and the Florida Class purchased their Class Vehicles.

178.   FCA breached the Lifetime Warranty by refusing to repair and/or adjust the materials and workmanship defects in the powertrain components of the Class Vehicles' materials and workmanship defects.

179.   Furthermore, the Lifetime Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Florida

Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

180.  Affording FCA a reasonable opportunity to cure their breach of Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated their obligations under the express warranty.

181.  FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

182.  As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and other Florida Class members have been damaged in an amount to be determined at trial.

## FLORIDA COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Florida Law)

183.  Plaintiffs Michael Celenza, Frank Bilotta, and the Florida Class members reallege and incorporate by reference all paragraphs as though fully set forth herein.

184.  To the extent FCA's repair or adjust commitment is deemed not to be a warranty under Florida's Commercial Code, Plaintiffs and the Florida Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiffs and the Florida Class

members to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by FCA, and/or warranted the quality or nature of those services to Plaintiffs.

185.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the Class Vehicles' failed powertrain components.

186.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiffs and the Florida Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### f.   Claims Brought on Behalf of the Georgia Class

### GEORGIA COUNT I

### BREACH OF EXPRESS WARRANTY

### (Ga. Code. Ann. §§ 11-2-313 and 11-2A-210)

187.   Plaintiff Davin Powell and the Georgia Class members reallege and incorporate by reference all paragraphs as though fully set forth herein.

188.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and "sellers" of motor vehicles under § 11-2-103(1)(d).

189.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

190.   In connection with the purchase of the Class Vehicles, FCA expressly warranted that they were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for entire duration of Plaintiffs' and Class members' ownership of the Class vehicles.

191.   FCA's promise of the Lifetime Warranty formed the basis of the bargain reached when Plaintiffs and the Georgia Class purchased their Class Vehicles.

192.   FCA breached the Lifetime Warranty by refusing to repair and/or adjust the materials and workmanship defects in the powertrain components of the Class Vehicles' materials and workmanship defects.

193.   Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Georgia Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

194.   Affording FCA a reasonable opportunity to cure their breach of Lifetime Warranty would be unnecessary and futile here because it has expressly repudiated their obligations under its terms.

195.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

196.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other Georgia Class members have been damaged in an amount to be determined at trial.

## GEORGIA COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Georgia Law)

197.   Plaintiff Davin Powell and the Georgia Class members reallege and incorporate by reference all paragraphs as though fully set forth herein.

198.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under Georgia's Commercial Code, Plaintiff and the Georgia Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiff and the Georgia Class members to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by FCA, and/or warranted the quality or nature of those services to Plaintiff.

199.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles

200.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the Georgia Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### g.  Claims Brought on Behalf of the Illinois Class

### ILLINOIS CLASS COUNT I

### BREACH OF EXPRESS WARRANTY

### (810 Ill. Comp. Stat. §§ 5/2-313 and 5/2A-210)

201.   Plaintiff Gerald McGuire and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

202.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

203.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

204.   In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA

promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for the entire duration of Plaintiffs' and Class members' ownership of the Class vehicles.

205.   FCA's Lifetime Warranty promise formed the basis of the bargain that was reached when Plaintiffs and the Illinois Class purchased their Class Vehicles.

206.   FCA breached the Lifetime Warranty by refusing to repair and/or adjust the materials and workmanship defects in the powertrain components of the Class Vehicles.

207.   Affording FCA a reasonable opportunity to cure its breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated its obligations.

208.   Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Illinois Class members whole and because FCA has failed and/or refused to adequately provide the promised remedies within a reasonable time.

209.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

210.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other Illinois Class members have been damaged in an amount to be determined at trial.

## ILLINOIS COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Illinois Law)

211.   Plaintiff Gerald McGuire and the Illinois Class members reallege and incorporate by reference all paragraphs as though fully set forth herein.

212.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under the Illinois Commercial Code, Plaintiffs and the Illinois Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiffs and the Illinois Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

213.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles.

214.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the Illinois Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all

compensatory damages, incidental and consequential damages, and other damages allowed by law.

### h. Claims Brought on Behalf of the Indiana Class

### <u>INDIANA COUNT I</u>

### <u>BREACH OF EXPRESS WARRANTY</u>

### (Ind. Code §§ 26-1-2-313 and 26-1-2.1-210)

215.   Plaintiff David Wilson and the Indiana Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

216.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under Ind. Code §§ 26-1-2-104(1) and 26-1-2.1-103(3), and "sellers" of motor vehicles under § 26-1-2-103(1)(d).

217.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

218.   In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for entire duration of Plaintiff's and Class members' ownership of the Class Vehicles.

219.   The Lifetime Warranty formed the basis of the bargain that was reached when Plaintiff and the Indiana Class purchased their Class Vehicles.

220.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles.

221.   Affording FCA a reasonable opportunity to cure its breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated its obligations.

222.   Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Indiana Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

223.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

224.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other Indiana Class members have been damaged in an amount to be determined at trial.

## INDIANA COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Indiana Law)

225.   Plaintiff David Wilson and the Indiana Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

226.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under Indiana Commercial Code, Plaintiffs and the Indiana Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiff and the Indiana Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

227.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles.

228.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiffs and the Indiana Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### i.   Claims Brought on Behalf of the Kentucky Class

### <u>KENTUCKY COUNT I</u>

### <u>BREACH OF EXPRESS WARRANTY</u>

### (Ky. Rev. Stat. §§ 335.2-313 and 355.2A-210)

229.   Plaintiffs Christina Heavrin, Joan Garn, and the Kentucky Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

230.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under Ky. Rev. Stat. §§ 35.2-104(1) and 355.2A-103(3), and "sellers" of motor vehicles under § 355.2-103(1)(d).

231.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ky. Rev. Stat. §§ 355.2-105(1) and 355.2A-103(1)(h).

232.   In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for the entire duration of Plaintiffs' ownership of the Class vehicles.

233.   FCA's promise of the Lifetime Warranty formed the basis of the bargain that was reached when Plaintiffs and the Kentucky Class purchased their Class Vehicles.

234.   FCA has breached the Lifetime Warranty by refusing to cover the cost of repairing defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

235.   Affording FCA a reasonable opportunity to cure its breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated its obligations.

236.   Furthermore, the limited warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Kentucky Class members whole, and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

237.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

238.   As a direct and proximate result of FCA's breach of express warranties, Plaintiffs and Kentucky Class members have been damaged in an amount to be determined at trial.

## KENTUCKY COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Kentucky Law)

239.  Plaintiffs Christina Heavrin, Joan Garn, and the Kentucky Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

240.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under Kentucky Commercial Code, Plaintiffs and the Kentucky Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiffs and the Kentucky Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

241.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles

242.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the Kentucky Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**j.   Claims Brought on Behalf of the Massachusetts Class**

<u>MASSACHUSETTS COUNT I</u>

<u>BREACH OF EXPRESS WARRANTY</u>

**(Mass. Gen. Laws Ch. 106 §§ 2-313 and 2A-210)**

243.   Plaintiff Andrew Young and the Massachusetts Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

244.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under Mass Gen. Laws ch. 106 § 2-104(1) and is a "seller" of motor vehicles under § 2-103(1) (d).

245.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Mass. Gen. Laws ch. 106 §§ 2-105(1) and 2A-103(1)(h).

246.   In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for entire duration of Plaintiff's and Class members' ownership of the Class vehicles.

247.   FCA's promise of the Lifetime Warranty formed the basis of the bargain reached when Plaintiff and the Massachusetts Class purchased their Class Vehicles.

248.   FCA has breached the Lifetime Warranty by refusing to repair defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

249.   Affording FCA a reasonable opportunity to cure its breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated its obligations under its terms.

250.   Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Massachusetts Class members whole, and because FCA has failed and/or refused to adequately provide the promised remedies within a reasonable time.

251.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

252.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other Massachusetts Class members have been damaged in an amount to be determined at trial.

## MASSACHUSETTS COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Massachusetts Law)

253.   Plaintiff Andrew Young and the Massachusetts Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

254.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under the Massachusetts Commercial Code, Plaintiff and the Massachusetts Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiff and the Massachusetts Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

255.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles.

256.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the Massachusetts Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### k.  Claims Brought on Behalf of the Nevada Class

### <u>NEVADA COUNT I</u>

### <u>BREACH OF EXPRESS WARRANTY</u>

### (Nev. Rev. Stat. §§ 104.2313 and 104A.2210)

257.   Plaintiff Alan Andersen and the Nevada Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

258.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under Nev. Rev. Stat. § 104.2104(1) and "sellers" of motor vehicles under § 104.2103(1)(c).

259.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Nev. Rev. Stat. §§ 104.2105(1) and 104A.2103(1)(h).

260.   In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for the entire duration of Plaintiff's and the Class members' ownership of the Class vehicles.

261.   FCA's promise of the Lifetime Warranty formed the basis of the bargain reached when Plaintiff and the Nevada Class purchased their Class Vehicles.

262.   FCA has breached the Lifetime Warranty by refusing to repair defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

263.   Affording FCA a reasonable opportunity to cure its breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated its obligations.

264.   Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Nevada Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

265.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

266.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other Nevada Class members have been damaged in an amount to be determined at trial.

## NEVADA COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Nevada Law)

267.   Plaintiff Alan Andersen and the Nevada Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

268.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under the Nevada Commercial Code, Plaintiff and the Nevada Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiff and the Nevada Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

269.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles.

270.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the Nevada Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**l.  Claims Brought on Behalf of the New Jersey Class**

<u>**NEW JERSEY COUNT I**</u>

<u>**BREACH OF EXPRESS WARRANTY**</u>

**(N.J. Stat. Ann. § 12A:2-313)**

271.   Plaintiffs Kenneth Henriques, Jane Loake, and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

272.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under N.J. Stat. Ann. § 12A:2-104(1) and "sellers" of motor vehicles under 2-103(1)(d).

273.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J. Stat. Ann. §§ 12A:2-105(1) and 2A-103(1)(h).

274.   In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for the entire duration of Plaintiffs' and the Class members' ownership of the Class vehicles.

275.   FCA's promise of the Lifetime Warranty formed the basis of the bargain reached when Plaintiffs and the New Jersey Class purchased their Class Vehicles.

276.   FCA has breached the Lifetime Warranty by refusing to repair defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

277.   Affording FCA a reasonable opportunity to cure their breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated their obligations under its terms.

278.   Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the New Jersey Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

279.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

280.   As a direct and proximate result of FCA's breach of express warranties, Plaintiffs and other New Jersey Class members have been damaged in an amount to be determined at trial.

## NEW JERSEY COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on New Jersey Law)

281.   Plaintiffs Kenneth Henriques, Jane Loake, and the New Jersey Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

282.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under New Jersey Commercial Code, Plaintiffs and the New Jersey Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiffs and the New Jersey Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

283.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles.

284.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiffs and the New Jersey Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## m. Claims Brought on Behalf of the New York Class

## <u>NEW YORK COUNT I</u>

## <u>BREACH OF EXPRESS WARRANTY</u>

### (N.Y. U.C.C. Law §§ 2-313 and 2A-210)

285.   Plaintiff Richard Van Orden and the New York Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

286.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

287.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

288.   In connection with the purchase one of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for the entire duration of Plaintiff's and the Class members' ownership of the Class vehicles.

289.   FCA's promise of the Lifetime Warranty formed the basis of the bargain reached when Plaintiff the New York Class purchased their Class Vehicles.

290.   FCA has breached the Lifetime Warranty by refusing to repair defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

291.   Affording FCA a reasonable opportunity to cure its breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated its obligations under its terms.

292.   Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the New York Class members whole and because FCA has failed and/or refused to adequately provide the promised remedies within a reasonable time.

293.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

294.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and the New York Class members have been damaged in an amount to be determined at trial.

## NEW YORK COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on New York Law)

295.   Plaintiff Richard Van Orden and the New York Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

296.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under the New York Commercial Code, Plaintiff and the New York Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiff and the New York Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

297.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles.

298.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the New York Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**n.  Claims Brought on Behalf of the North Carolina Class**

<u>**NORTH CAROLINA COUNT I**</u>

<u>**BREACH OF EXPRESS WARRANTY**</u>

**(N.C. Gen. Stat. §§ 25-2-313 and 252A-210)**

299.   Plaintiff Terry Buschbach and the North Carolina Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

300.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under N.C. Gen. Stat. § 25-2-104(1) and "sellers" of motor vehicles under § 25-2-103(1)(d).

301.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C. Gen. Stat. § 25-2-105(1) and § 25-2A-103(1)(h).5.

302.   In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for entire duration of Plaintiff's and Class members' ownership of the Class vehicles.

303.   FCA's promise of the Lifetime Warranty formed the basis of the bargain reached when Plaintiff and the North Carolina Class purchased their Class Vehicles.

304.   FCA has breached the Lifetime Warranty by refusing to repair defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

305.   Affording FCA a reasonable opportunity to cure its breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated its obligations.

306.   Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the North Carolina Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

307.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

308.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other North Carolina Class members have been damaged in an amount to be determined at trial.

## NORTH CAROLINA COUNT II

## BREACH OF CONTRACT/COMMON-LAW WARRANTIES

### (Based on North Carolina Law)

309.   Plaintiff Terry Buschbach and the North Carolina Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

310.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under the North Carolina Commercial Code, Plaintiff and the North Carolina Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiff and the North Carolina Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

311.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles

312.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the North Carolina Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**o.  Claims Brought on Behalf of the Ohio Class**

**OHIO COUNT I**

**BREACH OF EXPRESS WARRANTY**

**(Ohio Rev. Code § 1302.26, et seq.) (U.C.C. §2-313))**

313.    Plaintiff Keith Head and the Ohio Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

314.    FCA was and is at all relevant times a "merchant" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under § 1302.01(4).

315.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8) and 1310.01(A)(8).

316.    In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for entire duration of Plaintiff's and the Class members' ownership of the Class vehicles.

317.   FCA's promise of the Lifetime Warranty formed the basis of the bargain that was reached when Plaintiff and the Ohio Class purchased their Class Vehicles.

318.   FCA has breached the Lifetime Warranty by refusing to repair defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

319.   Affording FCA a reasonable opportunity to cure their breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated its obligations under the Lifetime Warranty's terms.

320.   Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Ohio Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

321.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

322.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other Ohio Class members have been damaged in an amount to be determined at trial.

## OHIO COUNT II

## BREACH OF CONTRACT/COMMON-LAW WARRANTIES

### (Based on Ohio Law)

323.   Plaintiff Keith Head and the Ohio Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

324.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under the Ohio Commercial Code, Plaintiff and the Ohio Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiff and the Ohio Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

325.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles.

326.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the Ohio Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**p.  Claims Brough on Behalf of the Oregon Class**

<u>OREGON COUNT I</u>

<u>BREACH OF EXPRESS WARRANTY</u>

**(Or. Rev. Stat. §§ 72.3130 and 72A.2100)**

327.   Plaintiff Scott Lunski and the Oregon Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

328.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under Or. Rev. Stat. §§ 72.1040(1) and 72A.1030(1)(t), and "sellers" of motor vehicles under § 72.1030(1)(d)

329.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Or. Rev. Stat. §§ 72.1050(1) and 72A.1030(1)(h).

330.   In connection with the purchase one of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for the entire duration of Plaintiff's and the Class members' ownership of the Class Vehicles.

331.   FCA's promise of the Lifetime Warranty formed the basis of the bargain reached when Plaintiff and the Oregon Class purchased their Class Vehicles.

332.   FCA has breached the Lifetime Warranty by refusing to repair defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

333.   Affording FCA a reasonable opportunity to cure its breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated its obligations.

334.   Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Oregon Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

335.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

336.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and the Oregon Class members have been damaged in an amount to be determined at trial.

## OREGON COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Oregon Law)

337.   Plaintiff Scott Lunski and the Oregon Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

338.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under the Oregon Commercial Code, Plaintiff and the Oregon Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiff and the Oregon Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

339.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles.

340.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the Oregon Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**q.  Claims Brought on Behalf of the Pennsylvania Class**

## PENNSYLVANIA COUNT I

## BREACH OF EXPRESS WARRANTY

**(13 Pa. Cons. Stat. §§ 2313 and 2A210)**

341.   Plaintiffs Stephen Bucklew, Victoria Hecker, and the Pennsylvania Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

342.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and "sellers" of motor vehicles under § 2103(a).

343.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

344.   In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for the entire duration of Plaintiffs' and the Class members' ownership of the Class Vehicles.

345. FCA's promise of the Lifetime Warranty formed the basis of the bargain reached when Plaintiffs and the Pennsylvania Class purchased their Class Vehicles.

346. FCA has breached the Lifetime Warranty by refusing to repair defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

347. Affording FCA a reasonable opportunity to cure their breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated its obligations under the Lifetime Warranty's terms.

348. Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Pennsylvania Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

349. FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

350. As a direct and proximate result of FCA's breach of express warranties, Plaintiffs and other Pennsylvania Class members have been damaged in an amount to be determined at trial.

## PENNSLYVANNIA COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Pennsylvania Law)

351.   Plaintiffs Stephen Bucklew, Victoria Hecker, and the Pennsylvania Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

352.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under the Pennsylvania Commercial Code, Plaintiffs and the Pennsylvania Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiffs and the Pennsylvania Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

353.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles.

354.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiffs and the Pennsylvania Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### r. Claims Brought on Behalf of the South Carolina Class

## <u>SOUTH CAROLINA COUNT I</u>

## <u>BREACH OF EXPRESS WARRANTY</u>

### (S.C. Code §§ 36-2-313 and 36-2A-210)

355.   Plaintiff James Byrd and the South Carolina Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

356.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under S.C. Code §§ 36-2-104(1) and 36-2A-103(1)(t), and "sellers" of motor vehicles under § 36-2-103(1)(d).

357.   The Class Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code §§ 36-2-105(1) and 36-2A-103(1)(h).

358.   In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for the entire duration of Plaintiffs' and the Class members' ownership of the Class Vehicles.

359.   FCA's promise of the Lifetime Warranty formed the basis of the bargain that was reached when Plaintiff and the South Carolina Class purchased their Class Vehicles.

360.   FCA has breached the Lifetime Warranty by refusing to repair defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

361.   Affording FCA a reasonable opportunity to cure its breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated its obligations under its terms.

362.   Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the South Carolina Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

363.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

364.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other South Carolina Class members have been damaged in an amount to be determined at trial.

## SOUTH CAROLINA COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on South Carolina Law)

365.   Plaintiff James Byrd and the South Carolina Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

366.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under the South Carolina Commercial Code, Plaintiff and the South Carolina Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiff and the South Carolina Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

367.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles.

368.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the South Carolina Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### s.  Claims Brought on Behalf of the Texas Class

### <u>TEXAS COUNT I</u>

### <u>BREACH OF EXPRESS WARRANTY</u>

### (Tex. Bus. & Com. Code §§ 2.313 and 2A.210)

369.   Plaintiff Barbara Asibor and the Texas Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

370.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104(1) and 2A.103(a)(20), and "sellers" of motor vehicles under § 2.103(a)(4).

371.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

372.   In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for the entire duration of Plaintiff's and Class members' ownership of the Class vehicles.

373.   FCA's promise of the Lifetime Warranty formed the basis of the bargain reached when Plaintiff and the Texas Class purchased their Class Vehicles.

374.   FCA has breached the Lifetime Warranty by refusing to repair defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

375.   Affording FCA a reasonable opportunity to cure its breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated its obligations.

376.   Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Texas Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

377.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

378.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other Texas Class members have been damaged in an amount to be determined at trial.

## TEXAS COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Texas Law)

379.   Plaintiff Barbara Asibor and the Texas Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

380.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under the Texas Commercial Code, Plaintiff and the Texas Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiff and the Texas Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

381.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles.

382.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the Texas Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**t.   Claims Brought on Behalf of the Utah Class**

## UTAH COUNT I

## BREACH OF EXPRESS WARRANTY

**(Utah Code Ann. §§ 70A-2-313 and 70A-2A-210)**

383.   Plaintiff Susan Stoker and the Utah Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

384.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under Utah Code § 70A-2-104(1) and 70A-2a-103(1)(t), and "sellers" of motor vehicles under § 70A-2-103(1)(d).

385.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Utah Code §§ 70A-2-105(1) and 70A-2a-103(1)(h).

386.   In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for the entire duration of Plaintiff's and the Class members' ownership of the Class Vehicles.

387.   FCA's promise of the Lifetime Warranty formed the basis of the bargain reached when Plaintiff and the Utah Class purchased their Class Vehicles.

388.   FCA has breached the Lifetime Warranty by refusing to repair defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

389.   Affording FCA a reasonable opportunity to cure its breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated its obligations.

390.   Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Utah Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

391.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

392.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other Utah Class members have been damaged in an amount to be determined at trial.

## UTAH COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Utah Law)

393.   Plaintiff Susan Stoker and the Utah Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

394.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under the Utah Commercial Code, Plaintiff and the Utah Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiff and the Utah Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

395.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles.

396.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the Utah Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**u.  Claims Brought on Behalf of the Virginia Class**

**VIRGINIA COUNT I**

**BREACH OF EXPRESS WARRANTY**

**(Va. Code Ann. §§ 8.2-313 and 8.2A-210)**

397.   Plaintiff Jessica Finch and the Virginia Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

398.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under Va. Code § 8.2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-103(1)(d).

399.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code §§ 8.2-105(1) and 8.2A-103(1)(h).

400.   In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for the entire duration of Plaintiff's and the Class members' ownership of the Class Vehicles.

401. FCA's promise of the Lifetime Warranty formed the basis of the bargain that was reached when Plaintiff and the Virginia Class purchased their Class Vehicles.

402. FCA has breached the Lifetime Warranty by refusing to repair defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

403. Affording FCA a reasonable opportunity to cure its breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated its obligations.

404. Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Virginia Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

405. FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

406. As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other Virginia Class members have been damaged in an amount to be determined at trial.

## VIRGINIA COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Virginia Law)

407.   Plaintiff Jessica Finch and the Virginia Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

408.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under the Virginia Commercial Code, Plaintiff and the Virginia Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiff and the Virginia Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

409.   FCA breached its warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles

410.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the Virginia Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### v.  Claims Brought on Behalf of the Washington Class

### <u>WASHINGTON COUNT I</u>

### <u>BREACH OF EXPRESS WARRANTY</u>

### (Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210)

411.   Plaintiff Maura Petersen and the Washington Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

412.   FCA was and is at all relevant times a "merchant" with respect to motor vehicles under Wash. Rev. Code § 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor vehicles under § 2.103(a)(4).

413.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

414.   In connection with the purchase of the Class Vehicles, FCA expressly warranted that the Class Vehicles were covered by the Lifetime Warranty. FCA promised to cover the cost of all parts and labor needed to repair powertrain components of the Class Vehicles that were defective in workmanship and materials. Moreover, FCA expressly warranted that its obligations under the Lifetime Warranty would run for entire duration of Plaintiff and Class members ownership of the Class vehicles.

415.   FCA's promise of the Lifetime Warranty formed the basis of the bargain reached when Plaintiff and the Washington Class purchased their Class Vehicles.

416.   FCA has breached the Lifetime Warranty by refusing to repair defects in the workmanship and/or materials of the powertrain parts and components of the Class Vehicles.

417.   Affording FCA a reasonable opportunity to cure its breach of the Lifetime Warranty would be unnecessary and futile here because FCA has expressly repudiated its obligations under its terms.

418.   Furthermore, the limited warranty of repair and/or adjustments to defective powertrain parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Washington Class members whole and because FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

419.   FCA was provided notice of these issues by numerous customer complaints, other lawsuits, and the instant Complaint.

420.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and other Washington Class members have been damaged in an amount to be determined at trial.

## WASHINGTON COUNT II

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on Washington Law)

421.   Plaintiff Maura Petersen and the Washington Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

422.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under the Washington Commercial Code, Plaintiff and the Washington Class members plead in the alternative under common law warranty and contract law theories. FCA limited the remedies available to Plaintiff and the Washington Class members to just repairs and adjustments needed to correct defects in materials or workmanship of powertrain components of the Class Vehicles.

423.   FCA breached this warranty or contract obligation by refusing to cover the cost of repairing the failed powertrain components of the Class Vehicles

424.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the Washington Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully request that this Court:

a.   determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

b.   appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

c.   award all actual, general, special, incidental, consequential damages and restitution to which Plaintiffs and members of the Class are entitled;

d.   award pre-judgment and post-judgment interest on any monetary relief;

e.   grant appropriate injunctive, including, without limitation, an order that requires Defendant to repair to repair the Class Vehicles that have been denied repairs under the Lifetime Warranty;

f.   grant appropriate declaratory relief, without limitation, an order declaring the Inspection Clause as an unenforceable provision of the Lifetime Warranty;

g.   award reasonable attorneys' fees and costs; and

h.   grant such further relief that this Court deems appropriate.

## VIII. JURY DEMAND

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.

Dated: May 18, 2020

Respectfully submitted,

By: */s/ E./ Powell Miller*
    E. Powell Miller (P39487)
    Sharon Almonrode (P33938)
    Emily E. Hughes (P68724)
    Dennis A. Lienhardt (P81118)
    William Kalas (P82113)
    **THE MILLER LAW FIRM, P.C.**
    950 W University Dr # 300,
    Rochester, Michigan 48307
    Telephone: (248) 841-2200
    epm@millerlawpc.com
    ssa@millerlawpc.com
    eeh@millerlawpc.com
    dal@millerlawpc.com
    wk@millerlawpc.com

    Richard D. McCune
    David C. Wright
    Steven A. Haskins
    Mark I. Richards
    **MCCUNE WRIGHT AREVALO, LLP**
    3281 E. Guasti, Road, Suite 100
    Ontario, California 91761
    Telephone: (909) 557-1250
    Facsimile: (909) 557-1275
    rdm@mccunewright.com
    dcw@mccunewright.com
    sah@mccunewright.com
    mir@mccunewright.com

    *Attorneys for Plaintiffs and the Putative Class*