## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PAUL GRUNDY, *et al.*,

                                       Case No. 2:20-cv-11231-SJM-APP

            Plaintiffs,                  Hon. Stephen J. Murphy, III

v.

FCA US LLC,

            Defendant.

_____/


### PLAINTIFFS' RESPONSE IN OPPOSITION TO
### DEFENDANT FCA'S MOTION FOR APPOINTMENT OF SIX
### "BELLWETHER" PLAINTIFFS FOR PURPOSE OF DETERMINING
### VIABILITY OF PLAINTIFFS'THEORY AT ASUMMARY JUDGMENT
### STAGE

# TABLE OF CONTENTS

*Page*

I     INTRODUCTION ............................................................................................1

II    ARGUMENT...................................................................................................3

    A.    The Application of a Bellwether Process to This Case is Both Unnecessary and Inferior to the Procedures Set Forth in Rule 23 ........3

    B.    The Adoption of a Bellwether Approach Would Do Nothing to Streamline Discovery and Would Guarantee that the Discovery Period Would Extend Long Beyond the Present Discovery Date, At Least, as to Non-Bellwether Plaintiffs ...................................................6

    C.    *Hall v. Fiat Chrysler America US LLC* Has No Relevance to the Instant Motion or to This Litigation ......................................................9

III    CONCLUSION.............................................................................................11

# TABLE OF AUTHORITIES

***Page(s)***

Cases

*Hall v. Fiat Chrysler Am. US LLC*,
     No. SACV2100762CJCDFMX, 2021 WL 3560231
     (C.D. Cal. July 20, 2021) ........................................................................ 10, 11

*In re Flint Water Cases,* Case,
     No. 16-10444, 2021 WL 3887687 (E.D. Mich. Aug. 31, 2021) ....................3

*Murphy v. Lockhart*,
     826 F. Supp. 2d 1016 (E.D. Mich. 2011) .......................................................4

*Smith v. Simmons*,
     638 F. Supp. 2d 1180 (E.D. Cal. 2009) .......................................................10

Rules

Fed. R. Civ. Proc. 12(b)(6) ....................................................................9, 11

Fed. R. Civ. Proc. 23 ...............................................................................v, 3

Fed. R. Civ. Proc.  23(c)(4)........................................................................3

E.D, Mich. L.R. 7.1(b)(2) ...........................................................................4

**ISSUES PRESENTED**

1.      Whether the Court should alter its pretrial schedule to institute a "Bellwether" Structure for purposes of summary judgment only in a class action lawsuit that makes no provision for applying the Bellwether structure to class certification, and will necessarily result in delaying the completion of discovery in this case?

## CONTROLLING OR MOST APPROPRIATE AUHTORITY

Scheduling Order (ECF No. 27)

Fed. R. Civ. Proc. 23

https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html,
     (last viewed Sept. 7, 2021.)

# I    INTRODUCTION

Plaintiffs purchased new 2007, 2008, or 2009 Chrysler brand vehicles ("Class Vehicles") based on promises that they were covered by a Lifetime Powertrain Limited Warranty ("Lifetime Warranty" or "the warranty"). Now, more than a decade later, Defendant FCA US LLC ("FCA" or "Defendant") has suddenly and systematically revoked thousands of these warranties, including Plaintiffs', and has refused to cover the cost of repairing the Class Vehicles pursuant to its contractual obligations. FCA's sole reason for repudiating the Lifetime Warranties is that Plaintiffs and the putative Class members allegedly failed to adhere to a non-obvious condition precedent in some Class Vehicle warranty manuals. This condition purportedly required the vehicles to undergo a "powertrain inspection" within 60-days of each 5-year anniversary of its in-service date ("the Inspection Clause").

Before Plaintiffs purchased their vehicles, Chrysler failed to inform them of any condition precedent to receiving the advertised benefits of the Lifetime Warranty. (First Amended Complaint ("FAC"), ECF No. 15, ¶¶ 6, 103, 106, 130, 144, 159, 174, 189, 204, 219, 234, 249, 264, 279, 294, 309, 324, 339, 354, 369, 384, 399, 414, 429, 444.). Unbeknownst to them at that time, to "continue" and "maintain" the Lifetime Warranty, their vehicles were required to undergo a "powertrain inspection" every 60 days of each 5-year anniversary of its in-service date. (FAC, ¶ 103.) Some never received these terms at all. For those Plaintiffs who purchased a 2007 Class Vehicle and many model year 2008 Class Vehicles, the Inspection Clause was not included

within the warranty manual that came with the vehicle. (FAC, ¶ 106.) For those who purchased model year 2009 Class Vehicles, although Chrysler included the Inspection Clause in the warranty manuals that were placed in the vehicle and delivered to the customers after the purchase had been completed, it was not reasonably conspicuous because it was in fine-print and indistinguishable from the surrounding text. (*Id.*) Plaintiffs contend that it is an unconscionable provision in a new vehicle limited warranty and the Court should limit or refuse its enforcement against them to avoid an unconscionable result.

Through this motion, Defendant FCA seeks to have this Court take the unprecedented step of disregarding its own scheduling order entered six months ago and apply a "Bellwether" structure to a class action lawsuit that does not even take into account the class certification process. Instead, Defendant proposed a non-specific structure that provides only for the selection of "six 'bellwether' for purposes of determining the viability of Plaintiffs' liability theory at the summary judgment stage," (ECF No. 28, PageID. 749), in the hopes that "resolution of certain common legal issues as to only a few Plaintiffs could limit the scope of discovery needed as to all," (*Id.*, PageID. 751). And while Defendant's motion is ostensibly based on the goal of "promoting economies of time and effort for the court, the parties, and the parties' counsel," (*id.,* PageID. 754), it provides no explanation as to how the proposed structure would actually accomplish this.

Plaintiffs oppose this motion on the grounds that: 1) the application of a

2

bellwether process to this case is unnecessary and inferior to the procedures set forth in Rule 23 of the Federal Rules of Civil Procedure; 2) the class certification process provides for the most efficient handling of the claims raised by Plaintiffs on behalf of the putative Class members; 3) Defendant's proposal is an attempt to make an end-run around discovery and go right to summary judgment;  and 4) the application of the bellwether process proposed by Defendant would actually increase the time required to resolve Plaintiffs' claims beyond that already provided for by the Court's scheduling order.

## II      ARGUMENT

### A.    The Application of a Bellwether Process to This Case is Both Unnecessary and Inferior to the Procedures Set Forth in Rule 23

Class action lawsuits such as this one are especially well-suited for the efficient administration of Plaintiffs' claims under Rule 23. Plaintiffs bring claims for: (1) breach of express warranty, and (2) breach of contract/common law warranty. *See generally* FAC. As will eventually be shown in Plaintiffs' motion for class certification, these allegations can be proven with common evidence based on Defendant's common course of conduct. Numerous courts, including some cited by Defendant, have contemplated the bellwether process in a class action lawsuit and found that the class certification process—including the option of certifying issues classes under Rule 23(c)(4), are more efficient than a bellwether process. *See In re Flint Water Cases,* Case No. 16-10444, 2021 WL 3887687, *39 (E.D. Mich. Aug. 31,

2021)[1] (finding the certification of issues classes to be superior to a bellwether process). The same is true here.

Defendant contends that "resolution of general issues applicable to all [Plaintiffs] could narrow the scope of discovery and the court's need to resolve a host of disputes as to each named plaintiff," but fails to explain how this would be accomplished any more efficiently than under the Court's existing scheduling order. Simple logic suggests that the opposite would be true. First of all, it is unclear whether Defendant wishes to limit the scope of its production of discovery to only the six bellwether states until the conclusion of the bellwether process. In any event, any such limitation should be rejected as Plaintiffs are entitled to fulsome discovery to prove their claims prior to responding to any motion for summary judgment. Plaintiffs oppose any process that would result in some discovery being produced now, with the remaining discovery produced at some unknown later date.

Second, Defendant ignores the fact that its proposed bellwether process would necessitate multiple summary judgment motions where, under Local Rule 7.1(b)(2), only one summary judgment motion is allowed to be filed by a party, without leave of court. *See Murphy v. Lockhart*, 826 F. Supp. 2d 1016, 1037 (E.D. Mich. 2011). But by seeking to proceed with summary judgment as to only a subset of Plaintiffs, it will more likely than not require the filing of successive motions for summary judgment to

---

[1] Unpublished cases cited herein are attached as Exhibit 1.

dispose of all Plaintiffs' claims, regardless of which way the Court rules on the substantive motion.

Third, the proposed bellwether process creates unnecessary inefficiencies. For example, if the court were to dismiss some or all of the bellwether Plaintiffs by granting summary judgment, the Court would be in a situation where certain Plaintiffs would be appealing their individual dismissals while the remaining non-bellwether Plaintiffs would be proceeding with re-opened discovery and motion practice. Furthermore, summary judgment motions brought against individual Plaintiffs before the certification of a class will have no binding effect on other representative Plaintiffs and the putative class members alike.[2]

Defendant has failed to cite to any applicable precedent[3] or provide any explanation for how the bellwether approach provides for any greater efficiency in this case than does the class certification process itself. While Defendant makes vague references to "the court's need to resolve a host of disputes as to each named Plaintiff," it fails to articulate what these hosts of disputes are or why they would not

---

[2] Defendant's motion seeks the institution of a bellwether process "for purposes of determining the viability of Plaintiffs' liability theory at the summary judgment stage . . . ." (ECF No. 28, PageID.760.) It is unclear whether Defendant's proposal also includes applying the bellwether process to class certification as well, or only to summary judgment. However, the filing and ruling on of summary judgment motions prior to the appointment of Plaintiffs as class representatives will do nothing to advance this case.

[3] The sparse authority cited by Defendant are examples of bellwethers used in mass tort cases or multidistrict litigation—not a single class action where all Plaintiffs have joined together to file a complaint.

best be addressed by a single motion for class certification and single motion for summary judgment, already provided for by the Court's scheduling order.

**B.    The Adoption of a Bellwether Approach Would Do Nothing to Streamline Discovery and Would Guarantee that the Discovery Period Would Extend Long Beyond the Present Discovery Date, At Least, as to Non-Bellwether Plaintiffs**

The primary justification for the motion appears to be that Defendant FCA believes that it is entitled to "notice the depositions of all 27 Plaintiffs and require them to appear in Michigan."[4] And while Defendant's motion is not the appropriate context in which to address the issue of whether Defendant can force each of the individual plaintiffs to travel to Michigan to be deposed in the middle of the resurgent COVID-19 pandemic, the dubiousness of FCA's position on this issue undercuts one of the main justifications it asserts for the need for the "bellwether" structure.[5] Indeed, while FCA cites several cases for the proposition that Plaintiffs can be compelled to travel to Michigan to be deposed when they chose to file their lawsuit in this jurisdiction, all of the cases cited pre-date the COVID-19 pandemic and all the cases

---

[4] Taking the deposition of 27 Plaintiffs is not unique to this case. For example, in *In re FCA US LLC Monostable Elec. Gearshift Litig.*, MDL No. 2744 (E.D. Mich.), FCA deposed approximately 40 plaintiffs prior to the close of discovery. In any event, FCA can choose not to take the deposition of every Plaintiff or voluntarily depose the Plaintiffs via remote services such as zoom if it does not want to incur unnecessary expenses.

[5] Indeed, subsequent to the filing of this motion, Defendant has served notices of deposition on 10 of the 27 plaintiffs seeking to require their personal appearance for deposition at defense counsel's office in Birmingham, Michigan. These notices will be the subject of requisite objection, meet and confer, and discovery motion process in due course.

expressly provided for an undue hardship analysis to be applied in determining whether a plaintiff should be compelled to travel to Michigan to be deposed. Defendant's assertion that Plaintiffs should be compelled to travel to Michigan for deposition ignores the reality that we are in the middle of the second worst period of the pandemic since it started a year and a half ago. According to the most recent statistics published by the Centers for Disease Control on the state of the COVID-19 pandemic in the United States:

> The current 7-day moving average of daily new cases (153,246) increased 4.9% compared with the previous 7-day moving average (146,087). The current 7-day moving average is 123.6% higher than the value observed approximately one year ago (68,533 new cases on July 20, 2020). The current 7-day moving average is 39.7% lower than the peak observed on January 10, 2021 (253,948) and is 1,217.0% higher than the lowest value observed on June 18, 2021 (11,636). A total of 39,488,866 COVID-19 cases have been reported as of September 1, 2021.

(https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html, (last viewed Sept. 7, 2021) (attached as Exhibit 2).) Like almost every other state, the CDC has listed Michigan as a state with a "high" level of community transmission. (https://covid.cdc.gov/covid-data-tracker/#cases_community (attached as Exhibit 3). While Plaintiffs will address this issue in more substantive detail at the appropriate time in the appropriate motion, Plaintiffs reference this issue here because they respectfully contend that that the need to depose multiple plaintiffs does not justify the imposition of a bellwether structure for purposes of summary judgment motions,

where these depositions can and should be taken by remote video deposition for the safety of the witnesses, counsel, and deposition staff.

Equally important, Defendant has provided no analysis for how the bellwether structure could be imposed without causing further delay to the pretrial schedule already ordered by the Court. On February 25, 2021, the Court issued a Scheduling Order setting the following relevant dates:

- Non-Expert Discovery Cut-off:      January 28, 2022
- Class Certification Motion Due:      April 20, 2022
- Dispositive Motions Due:      July 13, 2022

Though it is less than clear from the motion, Defendant appears to be seeking the bellwether structure in order to limit discovery to only six Plaintiffs selected by the parties. But, obviously, staying discovery as to only certain parties would necessarily require that the existing discovery period as to the non-bellwether Plaintiffs be continued beyond the existing January 28, 2022, discovery cut-off.

In this case, Defendant has already conducted extensive written discovery on all 27 Plaintiffs consisting of two sets of interrogatories consisting of nearly 1,000 interrogatories (accounting for sub-parts), 1,750 requests for production of documents, and requests for admission. Plaintiffs and their counsel have already expended significant time and effort in responding to this discovery. Avoiding the need to depose 21 Plaintiffs for some undefined period of time simply does not support the

8

highly unusual use of a bellwether process in this class action lawsuit.

**C.**   ***Hall v. Fiat Chrysler America US LLC* Has No Relevance to the Instant Motion or to This Litigation**

Defendant engages in pure sophistry arguing that a recent ruling in the Central District of California demonstrates "[t]he vital nature of a ruling on the legal sufficiency of the "Inspections" provision." (ECF No. 28, PageID. 758.) Given that counsel for Defendant FCA in the instant action represented FCA in the *Hall* action and was, therefore, intimately familiar with both the procedural posture in which that ruling was issued, as well as the factual allegations being alleged, it is surprising that nowhere in its discussion of *Hall*, did Defendant inform the Court that the ruling in *Hall* was an order granting a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6); not a motion for summary judgment or verdict after trial. Nor did Defendant inform the Court that the plaintiff in *Hall* was alleging an entirely different theory as to why the Inspections provision was not enforceable, than what has been pleaded in the instant action. Worse yet, Defendant selectively quoted excerpts from the *Hall* order to make it appear to be identical to the instant case when, in fact, the primary theory raised by the plaintiff and rejected by the Court appears nowhere in the instant litigation.

In *Hall*, the plaintiff did not argue that he did not receive the warranty manual that included the inspection clause prior to purchasing the vehicle, but rather, contended that this inspection requirement is "a subterfuge" because of inconsistent

language elsewhere in the warranty manual. The passage from which Defendant

quoted selective excerpts is quoted here in its entirety:

> Plaintiff nevertheless argues that this inspection requirement is "a subterfuge" because the Powertrain Warranty also instructs the customer to "[f]ollow the instructions contained in the . . . Owner's Manual," and the Owner's Manual does not reference the inspection requirement. (Opposition at 5; Powertrain Warranty at 46.) But instructing a customer to consult the Owner's Manual to understand how to "properly maintain and operate [their] vehicle" does not negate the Powertrain Warranty's specific provision that it only covers vehicles that have been inspected once every 5 years. Furthermore, even when "there is an inconsistency between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions." *Smith v. Simmons*, 638 F. Supp. 2d 1180, 1193 (E.D. Cal. 2009). Here, the inspection requirement is contained in the section titled "Lifetime Powertrain Limited Warranty"—the section specifically governing the Powertrain Warranty—while the instruction to follow the Owner's Manual comes over 30 pages later in a section titled "General Information." (Powertrain Warranty at 12, 46.)

*Hall v. Fiat Chrysler Am. US LLC*, No. SACV2100762CJCDFMX, 2021 WL

3560231, at *2 (C.D. Cal. July 20, 2021).

To the contrary, as this Court observed in its Opinion and Order Denying

Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint

under Rule 12(b)(6), "Plaintiffs' alleg[e] that they did not receive notice of the

inspection provision in the Lifetime Warranty" and "FCA did not present specific

agreements with Plaintiffs showing that Plaintiffs specifically were aware of or agreed

to the inspection provision." (ECF No. 21, PageID. 653.) Defendant is well aware that

no such allegations were raised by the plaintiff or addressed by the Court in *Hall*.

The decision in *Hall* simply has no bearing on the issues being litigated in this case or on Defendant's motion for the application of a bellwether process to this class action.

### III      CONCLUSION

Defendant fails to articulate how a bellwether process would be a superior or more efficient method of resolving Plaintiffs' claims than the class certification process and this Court's existing scheduling order. Furthermore, Defendants' two primary stated justifications for the need for a bellwether approach—having to take numerous Plaintiffs' depositions in Michigan and the *Hall* decision in California district court—do not support the need for the application of a bellwether system.

Therefore, Plaintiffs respectfully submit that the Court should deny Defendant's motion in its entirety.

Dated:  September 7, 2021                          Respectfully Submitted,

                                                  By: _/s/ E. Powell Miller_
                                                  E. Powell Miller (P39487)
                                                  Sharon Almonrode (P33938)
                                                  Dennis A. Lienhardt (P81118)
                                                  **THE MILLER LAW FIRM, P.C.**
                                                  950 W University Dr # 300,
                                                  Rochester, Michigan 48307
                                                  Telephone: (248) 841-2200
                                                  epm@millerlawpc.com
                                                  ssa@millerlawpc.com
                                                  dal@millerlawpc.com

Richard D. McCune
David C. Wright
Steven A. Haskins
Mark I. Richards
**MCCUNE WRIGHT AREVALO, LLP**
3281 E. Guasti, Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275
rdm@mccunewright.com
dcw@mccunewright.com
sah@mccunewright.com
mir@mccunewright.com

*Attorneys for Plaintiffs and the Putative Class*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 7, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

/s/ *E. Powell Miller*

E. Powell Miller